**Basil MARCEAUX, I**

v.

**Jim THOMPSON, et al.**

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

May 23, 2006 Session.

June 27, 2006.

Permission to Appeal Denied by
Supreme Court Nov. 13, 2006.

Basil Marceaux, I, Soddy Daisy, Tennessee, appearing pro se as appellant.

James E. Thompson, Crossville, Tennessee, for the appellees, Jim Thompson, Brock Hill, Butch Burgess, and Bill Gibson.

Alfred H. Knight and Alan D. Johnson, Nashville, Tennessee, for the appellees, The Tennessean Newspaper and U.S.A. Today.

Robert G. Norred, Jr., Chattanooga, Tennessee, for the appellees, Chattanooga Free Press (Chattanooga Publishing Company), Comcast (Comcast of the South), Channel 9 News (Freedom Broadcasting of Tennessee, Inc.), and Channel 3 News (Sarkes Tarzian, Inc.).

## OPINION

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

In this case, the plaintiff argues that the trial court erred in dismissing his complaint against various Cumberland County officials in association with the conduct of routine traffic stops and against various media defendants for failure to inform the public of the occurrence of these stops and of the alleged illegality of same. The trial court entered orders dismissing the plain-

tiff's complaint upon motions to dismiss and motion for summary judgment. Upon our finding that the plaintiff's complaint failed to state a claim upon which relief may be granted, we affirm the judgments of the trial court.

## I. Background

On January 7, 2004, the appellant/plaintiff Basil Marceaux I, filed a *pro se* complaint in the Chancery Court for Cumberland County. This complaint was styled as follows:

Basil Marceaux I

*and*

*Rule 2  4*

A Military and Naval Authority under the EMANCIPATION PROCLAMATION a with Rule 17 A Guardian of an express trust plus being a Marine civilian with a federal oath # 2747487 to protect the Constitution like the president for life And a citizen, who has at least 150 citizens nominated signatures for public offices

v

*Group 1* "conspirators" in *"Slavery through "Breaches of promise"* using civil RICO for *criminal side effects kidnapping, racketeering, extortion, jury fixxing gambling*

The citizens of A. (county attorney), B. (sheriff), C. (District Attorney), D. County Executive

*Group 2* "Co-conspirators" in *"Promoting Slavery through "Breaches of promise—*using civil RICO *for criminal side effects kidnapping, racketeering, extortion, jury fixxing*

A. *Chattanooga Free Press,*

*The Tennessean Newspaper, U.S. Today,*

B. *Channel2 News, Channel 9 News, Channel 3 News, Channel 61 News,*

C. *Comcast,*

*Clear Channel*

*Group 3* "Co-conspirators" in *"Promoting Slavery" through Breaches of promise* using civil RICO *for criminal side effects kidnapping, racketeering, extortion, jury fixxing*

*M.A.D.D. Tennessee*

(emphasis in original).

Subsequent pleadings filed in the trial court, including orders entered by the court, designate the defendants as "Jim Thompson (County Attorney), Butch Burgess (Sheriff), Bill Gibson (District Attorney), Brock Hill (County Executive)" (hereafter collectively referred to as "county officials") and "Chattanooga Free Press, The Tennessean Newspaper, U.S.A. Today, Channel 12 News, Channel 9 News, Channel 3 News, Channel 61 News [1], Comcast, Clear Channel" (hereafter collectively referred to as "local media"), and M.A.D.D. Tennessee [2]. The complaint lists 29 issues which, as articulated, are very difficult, if not impossible, to understand, as is evident from the following representative examples:

1. In group # 1 citizen defendants failed to tell the county and other cities inside of County about these cases that were over turn and ruled unconstitutional and allowing the plaintiff and rule 24, 17 and 200 citizens rights to be violated without remorse, looking for crimes of no knowledge.

2. In group one # 1 citizen defendants extended the county version of the bright line law which allow officers to look for crimes of which there is no

---

1. Upon motion of the plaintiff, Channel 61 (Pegasus Broadcast Television, Inc.) was dismissed from this appeal by order of this Court entered March 15, 2005.

2. M.A.D.D. is not a party to this appeal.

knowledge then the plaintiff would have 99% chance of a victory in this case and rule 24 the citizens of Tennessee rights would be reinstated.

3. In group one # 1 citizen defendants don't tell the cities of the County and county they can't makes the plaintiff with rule 24 and 200 Citizens drive along the county roads feanning intrusions of this magnitude at gun point.

4. In group one # 1 citizen defendants don't tell the cities of the County and county about open containers rulings in the U.S. Supreme Court and others court federal and states being unconstitutional looking for crimes of no knowledge.

5. In group one # 1citizen defendant don't tell the cities of the County and county about Dui rulings in the U.S. Supreme Court and others court federal and states being unconstitutional looking for crimes of no knowledge *Knowels v. Iowa.* and *Tn Appeal court Tn v. Pucket*

The complaint's request for damages with respect to county officials provided as follows:

stay the portals, stay the silent, $50,000 from each defendant by RICO violation may seek treble damages, by RICO violation may seek a warrant recommend impeachment and recommend, stay 2nd thought routine traffic stops and road blocks, remove the guns, install ticket givers, such as meter maid or tech as traffic cop and stay everything mention in this complaint, clear everyone records, and order it over county line answer all questions in complaint and anything else the court may think is justice. plus $50,000. each plus court cost

The complaint further requested damages with respect to the media defendants, as follows:

stay the portal, stay the silent, $100,000 dollars each defendant, $100,000 dollars for written public announcements about

routine traffic stops by RICO violation may seek treble damages by RICO violation may seek a warrant

We have reviewed the complaint in its entirety and, as best we can discern, it appears to claim that Cumberland County officials violated state and federal law in association with the conduct of certain routine traffic stops and that broadcast and print media likewise violated state and federal law by failing to apprise the public of these traffic stops and the alleged illegality of same.

On March 11, 2004, motions to dismiss and for summary judgment were filed by Freedom Broadcasting of Tennessee, Inc.; Media General Operations, Inc.; Sarkes Tarzian, Inc.; Pegasus Broadcast Television, Inc.; Comcast of the South and the Chattanooga Publishing Company, Inc., respective corporate owners of media defendants Channel 9, Channel 12, Channel 3, Channel 61, Comcast, and Chattanooga Free Press. The motion to dismiss requested that the plaintiff's complaint be dismissed for failure to state a claim upon which relief may be granted. The motion for summary judgment requested that the complaint be dismissed under the doctrines of *res judicata* and collateral estoppel upon grounds that the same issues raised by the appellant were previously adjudicated by the Hamilton County Chancery Court and were subject to a pending appeal.

On March 22, 2004, the defendants Jim Thompson, Bill Gibson, Butch Burgess, and Brock Hill also filed a motion to dismiss for lack of jurisdiction, failure to state a claim, lack of standing, and upon grounds of *res judicata* and collateral estoppel.

On March 29, 2004, the defendants *The Tennessean* and *U.S.A. Today* filed a motion to dismiss the complaint on grounds of *res judicata* and failure to state a claim.

On April 5, 2004, defendants Freedom Broadcasting of Tennessee, Inc.; Media General Operations, Inc.; Sarkes Tarzian, Inc.; Pegasus Broadcast Television, Inc.; Comcast of the South and the Chattanooga Publishing Company, Inc. filed a motion requesting that sanctions be imposed against the plaintiff pursuant to Tenn. R. Civ. P. 11.

On April 13, 2004, the trial court entered an order decreeing the nonsuit of plaintiff's claim against Channel 12 (Media General Operations, Inc.).

On April 20, 2004, *The Tennessean* and *U.S.A. Today* also filed a motion requesting that sanctions be imposed upon the plaintiff under Tenn. R. Civ. P. 11.

All of the above motions of the defendants came on for hearing on April 27, 2004. By order entered April 27, 2004, the trial court granted the March 11, 2004, motions for dismissal and for summary judgment and decreed that the plaintiff's complaint against Freedom Broadcasting of Tennessee, Inc.; (Channel 9); Sarkes Tarzian, Inc. (Channel 3); Pegasus Broadcast Television, Inc.(Channel 61); Comcast of the South (Comcast); and the Chattanooga Publishing Company, Inc.(Chattanooga Free Press) be dismissed with prejudice.

By subsequent order entered May 10, 2004, the trial court also granted the motion to dismiss filed by defendants James E. Thompson, Bill Gibson, Brock Hill, and Butch Burgess.

On May 27, 2004, the plaintiff filed a notice of appeal. Although Tenn. R.App. P. 3(f) provides that the notice of appeal "shall designate the judgment from which relief is sought," the notice of appeal filed by the plaintiff failed to designate the order appealed from. However, it being further provided at subsection (f) that "an appeal shall not be dismissed for informality of form," we will proceed with our review of plaintiff's case under the assumption that the orders appealed from are those entered on April 27, 2004, and May 10, 2004, as described above.

## II. Issue

The sole issue we review in this case is whether the trial court erred in dismissing plaintiff's complaint against the county officials and local media for failure to state a claim upon which relief may be granted.

Various grounds were presented by the defendants in the motion for summary judgment and motions for dismissal. However, in our review of the trial court's decision, we need not confirm that each of these grounds constituted a proper basis for dismissal. Rather, our inquiry ends once we find that any one of the grounds asserted by the defendants was a proper basis for dismissal. In this case, we find that the plaintiff's failure to state a claim upon which relief may be granted constituted sufficient grounds for dismissal of his complaint, as requested in defendants' motions to dismiss.

## III. Standards of Review

█ We restated the standard of review with respect to a motion to dismiss for failure to state a claim upon which relief may be granted under Tenn. R. Civ. P. 12.02(6) as follows in *Pendleton v. Mills,* 73 S.W.3d 115 (Tenn.Ct.App.2001):

> The sole purpose of a Tenn. R. Civ. P. 12.02(6) motion to dismiss is to test the sufficiency of the complaint, not the strength of the plaintiff's evidence. *Doe v. Sundquist,* 2 S.W.3d 919, 922 (Tenn. 1999); *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.,* 986 S.W.2d 550, 554 (Tenn.1999). It requires the courts to review the complaint alone, *Daniel v. Hardin County Gen. Hosp.,* 971 S.W.2d 21, 23 (Tenn.Ct. App.1997), and to look to the complaint's substance rather than its form. *Kaylor*

*v. Bradley,* 912 S.W.2d 728, 731 (Tenn. Ct.App.1995). Dismissal under Tenn. R. Civ. P. 12.02(6) is warranted only when the alleged facts will not entitle the plaintiff to relief or when the complaint is totally lacking in clarity and specificity. *Dobbs v. Guenther,* 846 S.W.2d 270, 273 (Tenn.Ct.App.1992).

A Tenn. R. Civ. P. 12.02(6) motion admits the truth of all the relevant and material factual allegations in the complaint but asserts that no cause of action arises from these facts. *Winchester v. Little,* 996 S.W.2d 818, 821–22 (Tenn.Ct. App.1998); *Smith v. First Union Nat'l Bank,* 958 S.W.2d 113, 115 (Tenn.Ct. App.1997). Accordingly, courts reviewing a complaint being tested by a Tenn. R. Civ. P. 12.02(6) motion must construe the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true, *Stein v. Davidson Hotel,* 945 S.W.2d 714, 716 (Tenn. 1997), and by giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts. Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 5–6(g), at 254 (1999). On appeal from an order granting a Tenn. R. Civ. P. 12.02(6) motion, we must likewise presume that the factual allegations in the complaint are true, and we must review the trial court's legal conclusions regarding the adequacy of the complaint without a presumption of correctness. *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.,* 986 S.W.2d at 554; *Stein v. Davidson Hotel,* 945 S.W.2d at 716.

*Pendleton,* 73 S.W.3d at 120–121.

With specific regard to our review of the claim of a *pro se* litigant, we reiterated as follows in *Young v. Barrow,* 130 S.W.3d 59 (Tenn.Ct.App.2003):

Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers.

Pro se litigants should not be permitted to shift the burden of the litigation to the.courts or to their adversaries. They are, however, entitled to at least the same liberality of construction of their pleadings that Tenn. R. Civ. 7, 8.05, and 8.06 provide to other litigants. Even though the courts cannot create claims or defenses for pro se litigants where none exist, they should give effect to the substance rather than the form or terminology, of a pro se litigant's papers.

*Young,* 130 S.W.3d at 62–63 (citations omitted).

### IV. The Local Media

■ As we have stated, plaintiff's complaint against the local media was based upon allegations that those parties failed to inform the public of the occurrence of routine traffic stops and of the alleged illegality of such stops. The plaintiff presents no authority that supports his argument that these media defendants were legally obligated to publish or broadcast news chosen by plaintiff, and both the

United States Supreme Court and the Tennessee Supreme Court have indicated that decisions regarding the decision as to what information will be published or broadcast is left to the media owners and editors.

In *Miami Herald Publishing Company v. Tornillo*, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974), the defendant newspaper refused to print a political candidate's replies to editorials criticizing his character. The candidate asserted that the newspaper was required to print his replies pursuant to a state statute that provided newspapers must publish a candidate's reply to an attack upon his or her record. The United States Supreme Court held that the statute was unconstitutional because it was inconsistent with the First Amendment's guarantee of a free press. In this regard, the United States Supreme Court stated as follows:

> [T]he Florida statute fails to clear the barriers of the First Amendment because of its intrusion into the function of editors. A newspaper is more than a passive receptacle or conduit for news, comment, and advertising. The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment. It has yet to be demonstrated how governmental regulation of this crucial process can be exercised consistent with Free Amendment guarantees of a free press as they have evolved to this time.

*Miami Herald Publishing Company*, 94 S.Ct. at 2839–2840.

Although *Miami Herald* pertains specifically to the rights of a newspaper, obviously the same exclusive editorial prerogative would exist in both the print and broadcast media, and we find no meaningful basis for distinguishing the two. In discussing the practical consequences of compulsive publication, the Court notes that a broadcaster is subject to finite time limitations that a newspaper is not. Thus, while a newspaper could expand its column to publish required material, a broadcaster would have to broadcast compelled material instead of material it would choose to broadcast and, accordingly, the resulting intrusion would be even more unreasonable.

In *Newspaper Printing Corp. v. Galbreath*, 580 S.W.2d 777 (Tenn.1979), a newspaper declined to accept the plaintiff's advertisement for publication in the form in which it was submitted by plaintiff. The plaintiff filed a class action suit seeking a mandatory injunction requiring the newspaper to "print all advertising, not in violation of any law, as composed by the author of same upon the payment or offer of payment of the usual rate." The Tennessee Supreme Court decreed that the newspaper had a right to refuse to publish the advertisements tendered by the plaintiff and stated as follows:

> The publication of a newspaper is strictly the private business of its publisher, and it has been aptly observed that a publisher "in publishing a paper, assumes no 'office, trust, or station' in a public sense, nor does he enter into any public or contractual relation with the community at large. ...." Am.Jur.2d Newspapers, Periodicals, Etc. s 20 (1971).

> . . .

> [F]reedom of the press means freedom not to publish, as well as freedom to publish, as the publisher sees fit.

*Newspaper Printing Corp.*, 580 S.W.2d at 779.

Accordingly, the trial court did not err in granting the local media's motion to dismiss for failure to state a claim.

### V. County Officials

We also find that the plaintiff's complaint failed to state a claim upon which relief may be granted with respect to the defendant county officials, Jim Thompson, Butch Burgess, Brock Hill, and Bill Gibson. With respect to these defendants, referred to by plaintiff as "the group one citizens," plaintiff set forth the following argument in his complaint:

The plaintiff suggest that the group one citizens cease to be a defensive instrument and became a coercive weapon, this happen when the defendants engages in violence against the peaceful citizen, restricts the liberty of a citizen, and confiscate a citizen property for— their own or some other entity to profit. All The group citizens criminal acts are far the absolute worst than armed raping,

All the below U.S. supreme court rulings are being laugh at by all the parties *Adams v. william* 407 u.s 143 June 12 1972 ... gun cars, heron *Michigan Department of state police v. Sita* ... sobriety check points *Dolvare v. Prouse* 440 u.s. 648 March 27, 1979 marihuana in plain view *Illinois v. Gates* 462u.u. 213 June 8 1983 ... informant, acting on a tip selling, drugs, car *Michigan v. long* ... u.s. 798 June 1 1982==speeding, marihuana *U.S. v. Ross* 456 us 798, junr82==informant, white powder in car Then with Under *Knowles v. Iowa* in 1998 and other publications of it states police are limited to only giving tickets without a intimating guns and any search is illegal. all other citizens' rights needs to be protected as our forefathers promised with the U.S. Constitution. The gun has to go and meter maids and techs will be sanding there.

The U.S. Supreme Court unanimously ruled in *Knowels v. iowa* in 1998 that police officers couldn't automatically search a vehicle during a routine stop. All justices agree that no further evidence of excessive speed were going to be found either on the persons in the car, or in the passenger compartment of the car. Chief justice W. Rehnquist said the law, which was designed to protect officers during an arrest, did not apply in relative's brief encounter such as a traffic stop.

Now this is three years since Knowels vs Iowa was ruled on. over 34,250,000 (estimated) state wide wrong ruling since 1983 and now everybody involved is turning into a slavery racketeers, exorcist, kidnapper at gun point, these comes are to big to stop, bigger than Watergate

IF dui and drugs are crimes, then kidnapping, extortion, racketeering, gaming, jury fixing, slavery are also crimes. Crime are crimes and no one is exempt

The plaintiff then lists various case citations and concludes as follows:

All the above cases were for or not for searches in routine traffic stop in *Knowels v. Iowa* and all "for "arguments were denied or reversed. The plaintiff agrees with the U.S. Supreme Court and relieve that there are over 150 people that are being arrested every day here in Hamilton county.

After careful review of plaintiff's argument as set forth above, as well as the remainder of plaintiff's complaint with respect to the county officials, we are compelled to the conclusion that plaintiff's complaint against various Cumberland County officials consists of a series of rambling criticisms—none of which sets forth a cause of action against these officials or the government that they serve.

### VI. Conclusion

For the foregoing reasons, the judgments of the trial court dismissing plaintiff's cause of action against the appellees is affirmed. Costs of appeal are adjudged against the appellant, Basil Marceaux, I.