IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 28, 2009

## OLIN MORRIS, Successor Trustee of the U.A.B. Holding Trust v. MARTIN A. GRUSIN, Former Trustee of U.A.B. Holding Trust, ET AL.

Direct Appeal from the Circuit Court for Shelby County
No. CT-004288-06      Karen R. Williams, Judge

No. W2009-00033-COA-R3-CV - Filed December 22, 2009

A Trust was created in 1985.  In both 1997 and 1999, the grantor consented to the use of the Trust's stocks for the benefit of a separate entity, of which the Trust owned a one-half interest.  In 2001, an agreement was entered whereby the Trust's stocks were pledged to a bank in return for a loan to the Trust.  The Trust then transferred the loan monies to the separate entity to pay off the separate entity's indebtedness.  After the Trustee's resignation, the successor Trustee brought suit, alleging breach of fiduciary duties, civil conspiracy, and misappropriation and conversion.  The trial court granted the defendants' motion to dismiss, finding that they had not engaged in unlawful conduct.  Plaintiff appeals, and we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Robert D. Flynn, Michael R. Flynn, Memphis, Tennessee, for the appellant, Olin Morris, Successor Trustee of the U.A.B. Holding Trust

Randall D. Noel, Memphis, Tennessee; Donna Brown Jacobs, John A. Crawford, Jr., Memphis, Tennessee for the appellees, CBC World Markets Corporation and John Ashby

## I. FACTS & PROCEDURAL HISTORY

On June 3, 1985, William B. Tanner ("Tanner"), as grantor, created the U.A.B. Holding Trust ("Trust") for the benefit of his grandchildren. Martin A. Grusin ("Grusin") was named Trustee, and the Trust was funded with stock of what would eventually become Regions Bank. The Trust Agreement provided, in relevant part, as follows:[1]

> (a) I empower the Trustee . . . without authorization or approval of any court, to acquire, by purchase or otherwise, and retain, temporarily or permanently, any and all kinds of realty and personalty, even common stocks and unsecured obligations, without diversification as to kind or [illegible]; sell or otherwise dispose of any such property, publicly or privately, wholly or partly on credit, delegate-discretion and distribute in kind or money or partly in each.

> (b) The Trustee shall not be liable for any investment or management decisions regarding the assets of this Trust made during the Grantor's lifetime if he has obtained the written consent or written approval of the Grantor . . . . This clause shall not be interpreted to limit the Trustee's control of the assets of the trust but shall allow him a means of making investments and management decisions without fear of reprisals or other persons "second-guessing him." This clause is considered necessary by the Trustee due to the fact that it is anticipated that the proper administration of the assets of this Trust will require numerous management decisions which are best efforts, good faith judgment decisions.

> . . . .

> The Trustee herein is authorized to exercise the introductory paragraph of the thirty-two (32) enumerated powers found in the 1963 Public Acts of the state of Tennessee, Chapter 110, Section 3 (Tennessee Code Annotated, Sec. 35-50-110),[2] and I hereby incorporate by reference said Code section in its

---

[1] We note that the Trust Agreement is poorly copied, and thus, certain parts are illegible.

[2] Tennessee Code Annotated section 35-618, now Tennessee Code Annotated section 35-50-110, provided in part:

entirety as if copied herein verbatim. These powers are granted, notwithstanding that said statute may be amended or repealed hereafter.

On or about March 24, 1997, Tanner Equities, LLC ("Tanner Equities") was created as an entity separate from the Trust. However, the Trust held a fifty percent ownership interest in Tanner Equities. Both the Trust and Tanner Equities held securities and trading accounts with Prudential Securities ("Prudential"), with John Ashby ("Ashby") acting as broker. On May 6, 1997, Tanner and Grusin executed a "Consent of Trustee to Pledge" document, authorizing Prudential "to use the securities in the account of the UAB Trust up to the margin limit for the benefit of the Tanner equities, L.L.C. account."

In May of 1999, Ashby left Prudential and became an officer and employee of Oppenheimer & Company, Inc. ("Oppenheimer"). The following month, the Trust's securities were transferred from a Prudential account to a new account with Oppenheimer. A second "Consent to Trustee to Pledge" document was executed by Tanner and Grusin, authorizing Oppenheimer "to use the securities in the account of the UAB Trust up to the margin limit for the benefit of the Tanner Equities, L.L.C. account."[3]

By October 2, 2001, Tanner Equities allegedly had an unsecured margin of indebtedness of $14,970,621.00 in the Oppenheimer account. On that date, an "Equity Protection Agreement"[4] was allegedly brokered between the Trust and Commerz Bank.

---

Without diminution or restriction of the powers vested in him by law, or elsewhere in this instrument, the fiduciary, without the necessity of procuring any judicial authorization therefor, or approval thereof, shall be vested with, and in the application of his best judgment and discretion in behalf of the beneficiaries of this instrument shall be authorized to exercise, the powers hereunder specifically enumerated:

. . . .

  32. To do any and all other things, not in violation of any other terms of this instrument, which, in the judgment of the fiduciary, are necessary or appropriate for the proper management, investment and distribution of the assets of the estate in accordance with the provisions of the instrument, and in his judgment are for the best interests of the estate and its beneficiaries.

**Tenn. Code Ann. § 35-618 (1977)**.

[3] Both the 1997 and the 1999 consents to pledge state that "This authorization is given based upon the fact that the UAB Trust is the owner of fifty (50%) percent interest in Tanner Equities, L.L.C." They also state that both parties "recognize[] and agree[] that the pledging of securities of the UAB Trust . . . constitute[s a] valid and prudent investment for the UAB Trust, enhancing the income of the UAB Trust and Tanner Equities, L.L.C."

[4] This document is not included in the record before us.

Under the Equity Protection Agreement, the Trust purportedly delivered 612,000 shares of Regions Bank stock to Commerz Bank in exchange for a loan of $14,970,621.00 to the Trust. The Trust then, allegedly, used those funds to pay off Tanner Equities' margin of indebtedness to Oppenheimer.

Grusin resigned as Trustee in October of 2004, and Olin Morris ("Morris") was named successor Trustee. Tanner died in December of 2005. On August 15, 2006, Morris filed a complaint against Grusin, alleging breach of fiduciary duty and civil conspiracy, and against Oppenheimer and Ashby, alleging misappropriation and conversion, breach of fiduciary duty, and civil conspiracy. Morris claimed that Grusin failed to disclose to the beneficiaries that he had used the Trust's assets to pay off the Tanner Equities debt "without any expectation of ever recovering the nearly $15,000,000 from Tanner Equities." The complaint was amended on August 24, 2006, to name CIBC World Markets Corporation ("CIBC") as a defendant.[5]

Ashby and CIBC (collectively, "Defendants"), filed a motion to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6), claiming that Morris' amended complaint failed to state a claim upon which relief could be granted. Specifically, Defendants claimed that Morris's amended complaint alleged no unlawful conduct by Defendants, as he admitted that Defendants were authorized to pledge the Trust's shares. Following a hearing, the trial court granted Defendants' motion to dismiss, finding as follows:[6]

1. This case is a Rule 12 Motion to Dismiss not a Rule 56 Motion for Summary Judgment.

2. The Trust was created in 198[5][7] by William B. Tanner. Martin A. Grusin was named the Trustee and was given broad power to act with the written consent of Mr. Tanner. At the time, Tennessee statutory and

[5] The amended complaint stated that Oppenheimer & Co. purchased CIBC Oppenheimer from CIBC World Markets Corp. in January of 2003, and that CIBC Oppenheimer Co. is now named Oppenheimer & Co, Inc. According to Morris, CIBC World Markets Corp. "contractually agreed to retain responsibility for claims such as these presented by the allegation of this Amended Complain which pre-date the sale in January [of] 2003[.]" Thus, Morris voluntarily dismissed its claim against Oppenheimer & Co., Inc. on October 9, 2007.

[6] The trial court's "Order Granting Defendants' Motion to Dismiss" of December 4, 2008, incorporated its November 26, 2008 correspondence.

[7] The trial court mistakenly stated that the Trust was created in 1987; however, there is no indication that this error affected its analysis.

case law permitted this.

3.    In 1997, a Consent to Pledge was entered into pursuant to the terms of the Trust. This was lawful at the time.

4.    In 1999, a second Consent to Pledge was entered into. This was lawful at the time.

5.    In October 2001, the Equity Protection Agreement with CommerzBank was entered into and the margin account was paid off with the proceeds. This was lawful at the time.

6.    In 2002, the Tennessee Legislature passed the Uniform Prudent Investor Act and in 2004, the Tennessee Legislature passed the Uniform Tennessee Trust Code. These acts restricted the freedom of the Trustees and made unlawful the type of transactions taken by Tanner, Grusin, Ashby and CIBC. However, the 2002 Act and the 2004 Act are not applicable to the case at bar.[8]

7.    Since the acts taken by Defendants and Mr. Tanner were lawful pursuant to the Trust instrument and the then applicable law, the Motion to Dismiss is granted.[9]

## II.    ISSUES PRESENTED

Appellant has timely filed his notice of appeal and presents the following issue for review:

1.    Did the trial court err in granting the Defendants John Ashby and CIBC World Markets Motions to Dismiss where the dismissal was based upon an alleged exculpatory clause in the Trust Agreement?

---

[8] On appeal, Morris does not challenge the trial court's finding that these acts are inapplicable.

[9] There is no indication that the trial court's findings of lawfulness were based on the Trust Agreement's exculpatory clause.

### III. STANDARD OF REVIEW

First, we must address the standard of review in this case. Defendants urge this Court to adopt, for purposes of motions to dismiss under Tennessee Rule of Civil Procedure 12.02(6), the United States Supreme Court's "clarified" standard of review regarding dismissals pursuant to Federal Rule of Civil Procedure 12(b)(6). **(Appellee's Br7)**. Defendants suggest that the "famous observation" in *Conley v. Gibson*, 355 U.S. 41, 45-56 (1957), *abrogated by Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" was retired by the United States Supreme Court in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 561 (2007). Defendants cite the recent case of *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), wherein the United States Supreme Court, applying *Twombly*, stated:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Twombly*, 550 U.S. at 570]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*.[] at 556 []. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*.[] at 557[.]

The Court further explained that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" and that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). The Court adopted a two-step approach to analyzing a complaint challenged under Federal Rule of Civil Procedure 12(b)(6): first, the court identifies conclusory allegations in the complaint that are not entitled to a presumption of truth; and second, the court considers whether the factual allegations "plausibly suggest an entitlement to relief." *Id.* at 1951.

Although Tennessee Rule of Civil Procedure 12.02(6) and Federal Rule of Civil Procedure 12(b)(6) are similar,

> The Supreme Courts of the respective states are bound only by decisions of the Supreme Court of the United States when that Court holds that a given course of conduct is unconstitutional under the federal constitution.

***Bowman v. Henard***, 547 S.W.2d 527, 530 (Tenn. 1977).  Thus, the United States Supreme Court's standard for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) does not bind the courts of this state regarding dismissals under Tennessee Rule of Civil Procedure 12.02(6).

The Tennessee Supreme Court, regarding motions to dismiss pursuant to Rule 12.02(6), recently stated:

> A Rule 12.02(6) motion under the Tennessee Rules of Civil Procedure seeks to determine whether the pleadings state a claim upon which relief may be granted. *Edwards v. Allen,* 216 S.W.3d 278, 284 (Tenn. 2007). Such a motion tests only the legal sufficiency of the complaint, not the strength of the proof. The resolution of the motion is determined by an examination of the pleadings alone. *Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.,* 878 S.W.2d 934, 938 (Tenn. 1994) (citing *Wolcotts Fin. Servs., Inc. v. McReynolds,* 807 S.W.2d 708, 710 (Tenn. Ct. App. 1990)). For purposes of analysis, the motion contemplates that all relevant and material allegations in the complaint, even if true and correct, do not constitute a cause of action. In considering a motion to dismiss, courts must construe the assertions in the complaint liberally; the motion cannot be sustained unless it appears that there are no facts warranting relief. *Cook,* 878 S.W.2d at 938 (citing *Fuerst v. Methodist Hosp. S.,* 566 S.W.2d 847, 848-49 (Tenn. 1978)). On appeal, all allegations of fact by the Plaintiffs must be taken as true. *Stein v. Davidson Hotel Co.,* 945 S.W.2d 714, 716 (Tenn.1997). Our scope of review is de novo with no presumption of correctness. *Colonial Pipeline Co. v. Morgan,* 263 S.W.3d 827, 836 (Tenn.2008); *Owens v. Truckstops of Am.,* 915 S.W.2d 420, 424 (Tenn.1996).

***Highwoods Properties, Inc. v. City of Memphis***, ---S.W.3d----, 2009 WL 2226091, at *3 (Tenn. 2009).  We "review the trial court's legal conclusions regarding the adequacy of the complaint without a presumption of correctness." ***Rose v. Cookeville Reg'l Med. Ctr.***, No. M2007-02368-COA-R3-CV, 2008 WL 2078056, at *4 (Tenn. Ct. App. May 14, 2008) (citing *Marceaux v. Thompson*, 212 S.W.3d 263, 267 (Tenn. Ct. App. 2006)).

"Once the Tennessee Supreme Court has addressed an issue, its decision regarding that issue is binding on the lower courts." ***Davis v. Davis***, No. M2003-02312-COA-R3-CV, 2004 WL 2296507, at *6 (Tenn. Ct. App. Oct. 12, 2004) (citing *State v. Irick*, 906 S.W.2d 440, 443 (Tenn. 1995); *Payne v. Johnson*, 2 Tenn. Cas. (Shannon) 542, 543 (1877)).  "The

Court of Appeals has no authority to overrule or modify [the] Supreme Court's opinions." ***Bloodworth v. Stuart***, 428 S.W.2d 786, 789 (Tenn. 1968) (citing *City of Memphis v. Overton*, 392 S.W.2d 86, 97 (Tenn. Ct. App. 1963); *Levitan v. Banniza*, 236 S.W.2d 90, 95 (Tenn. Ct. App. 1950)); *see also* ***Barger v. Brock***, 535 S.W.2d 337, 340-41 (Tenn. 1976). Accordingly, we are not at liberty to adopt the more liberal standard for dismissing complaints for failure to state a claim urged by Defendants.

## IV.   DISCUSSION
### A.   Exculpatory Clause

On appeal, Morris argues that dismissal based upon the Trust Agreement's exculpatory clause was inappropriate. Specifically, he asserts that the exculpatory clause should be invalidated because "[p]rior to 2002, Tennessee did not have a statute authorizing exculpatory clauses in trust agreements[,]" and because the exculpatory clause violates the public policy of this state. He also contends that the exculpatory clause "should not be enforced because Grusin's actions constitute willful and/or gross negligence."

First, we note that the trial court's dismissal of Morris' complaint was not based on the exculpatory clause, as Morris suggests, but instead was based on its finding that none of the Defendants engaged in unlawful conduct. We need not address Morris' arguments regarding the exculpatory clause because it foreclosed liability only as to Grusin, who has been dismissed from this case.

### B.   Civil Conspiracy

Morris also argues that his civil conspiracy claim against Defendants was improperly dismissed, as "the exculpatory clause would not affect John Ashby and/or CIBC." Again, Morris mistakenly argues that the trial court's dismissal was founded on the Trust Agreement's exculpatory clause. Morris contends that even if the exculpatory clause relieved Grusin from liability, it did not afford immunity to Defendants.

As we stated above, the trial court's dismissal of Morris' claims–including civil conspiracy–was based on its finding that none of the parties engaged in unlawful conduct. On appeal, Defendants contend that because Morris' amended complaint acknowledged that Tanner consented to Grusin's actions, that Morris has failed to allege unlawful conduct. We reject this contention because Tanner's consent fails to conclusively establish lawfulness.

-8-

Nonetheless, we uphold the trial court's dismissal of Morris' civil conspiracy claim. "The elements of a cause of action for civil conspiracy are: (1) a common design between two or more persons, (2) *to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means*, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." ***Kincaid v. SouthTrust Bank***, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006) (emphasis added) (citing *Morgan v. Brush Wellman, Inc.*, 165 F. Supp. 2d 704, 720 (E.D. Tenn. 2001)). On appeal, Morris does not challenge the trial court's finding that Defendants' actions were lawful, thus we will not address the issue.[10] Without an unlawful act by the Defendants, Morris' civil conspiracy claim fails. Thus, the trial court's dismissal is affirmed.

## V. CONCLUSION

For the aforementioned reasons, we affirm the circuit court's dismissal. Costs of this appeal are taxed to the appellant, Olin Morris, Successor Trustee of the U.A.B. Holding Trust, and his surety, for which execution may issue if necessary.

---

ALAN E. HIGHERS, P.J., W.S.

---

[10] Regarding the law in force at the time of the events, Morris argues only that the law would not have authorized the Trust Agreement's exculpatory clause, and that the common law would have invalidated the exculpatory clause as against public policy.