# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 4, 2010 Session

## COLE BRYAN HOWELL, III, ET AL. v. CHERYL RYERKERK, ET AL.

### Appeal from the Circuit Court for Knox County
#### No. 1-619-07      Dale C. Workman, Judge

---

### No. E2009-01536-COA-R3-CV - FILED APRIL 30, 2010

---

Cole Bryan Howell, III ("the Grandson"), is the son of Cole Bryan Howell, Jr. ("the Father"), who in turn is the son of Margaret Lyons Howell ("the Grandmother"). The Grandson inherited stock in Howell Nurseries, Inc. ("the Nursery") through the Grandmother's will, which left a block of stock to the Father for life and then to the Father's children. After the Father's death, the Grandson filed this stockholder's derivative action against all persons who acted as directors of the Nursery and the Nursery itself ("the Defendants"), claiming, in essence, that the directors had sold away all of the corporate assets, leaving him with a rather hollow inheritance. The trial court held that the Grandson did not have standing to challenge any transactions that preceded the Father's death because it was only after his death that the Grandson became the owner of the stock. The trial court ordered an accounting as to all monies handled after the Father's death, which the Defendants filed with the court. Over the Grandson's objections, the trial court, on the Defendants' motion, approved the accounting and dismissed the case in its entirety. The Grandson appeals. We vacate the judgment of dismissal and remand for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Vacated; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

W. Tyler Chastain and Margo J. Maxwell, Knoxville, Tennessee, for the appellant, Cole Bryan Howell, III.

John M. Norris, Strawberry Plains, Tennessee, for the appellees, Cheryl Ryerkerk, The Estate of Florence Howell Wallis, Carl Wallis, Margaret Ann Gehring and Howell Nurseries, Inc.

# OPINION

## I.

The Grandmother's will provides, in pertinent part, as follows:

> Third: I hereby will to my son, Cole Bryan Howell, Jr. a life estate in one half of my stock in Howell Nurseries, Inc., and said stock shall be retained by him to enjoy the income therefrom and the stock upon his death shall go to his children equally or if one of said children should be deceased, leaving descendants, then to the descendants of such deceased per stirpes, . . . and if said Cole Bryan Howell, Jr., should die leaving no living descendants, or if all his descendants should die before having attained the age of 21 years, then all rights in said stock shall pass to my daughter, Florence Ann Howell Wallis or her living descendants per stirpes.

> Fourth: The remaining one half of my stock in Howell Nurseries, Inc., I leave to my daughter, Florence Ann Howell Wallis, or if she should predecease me, then to her living descendants per stirpes. If the said Florence Ann Howell Wallis should predecease me and leave no living descendants, then the stock which would otherwise go to her, I leave to be divided among the living descendants of Cole Bryan Howell, Jr., per stirpes.

The Grandmother died October 24, 1972. The Father and his sister Florence ("the Aunt"), the other life tenant under the Grandmother's will, co-administered their mother's estate. From the time of the Grandmother's death, the Father and the Aunt exercised the powers of stockholders over their respective blocks of stock that the Grandmother had owned.

In June 2002, the Nursery, by and through the Father and the Aunt acting as officers of the Nursery, entered into a contract with Knoxville Botanical Gardens and Arboretum ("the Arboretum") to sell the Arboretum 10 acres of the Nursery's property. The contract granted the Arboretum an option to purchase the Nursery's home office consisting of 18.5 acres and improvements. According to the allegations in the complaint, the Father and the Aunt approved the sale without notifying any of the shareholders and effectively liquidated the corporate assets outside the normal course of business in violation of their statutory and fiduciary obligations. The sale of the initial 10 acres closed on or about August 30, 2002, at

-2-

a sales price of $150,000. The Arboretum exercised its option and closed on the remaining property on or about May 11, 2004, at a purchase price of $275,850.

The Father died on or about October 10, 2003. The Aunt ran what remained of the Nursery until her death on June 8, 2004. From the time of the Father's death until the present, the Aunt, the Aunt's husband, Carl Wallis, the Grandson's sister, Cheryl Ryerkerk, and Margaret Gehring have acted as the officers and directors. As previously noted, this group of directors and the corporate entity, the Nursery, collectively make up the Defendants.

In June 2004, the Grandson became aware that the Nursery had scheduled a public sale of all its personalty, consisting of equipment, vehicles, tools, and office furniture. The Grandson protested, but the sale proceeded. The only asset of the Nursery at the present time is a parcel of real property with an unknown value.

The Grandson filed this present action pro se on December 27, 2007. He mistakenly captioned the complaint as the "Second Amended Complaint." He had filed a previous action which he voluntarily dismissed without prejudice within one year prior to December 27, 2007. The Defendants filed a motion for summary judgment asserting that the complaint was filed outside the period of the statute of limitations. The Grandson, still acting pro se, did not respond to the motion. The trial court granted the unopposed motion for summary judgment. Upon securing counsel, the Grandson filed a motion to alter or amend the summary judgment, which the trial court granted in part. The court held that all claims asserted in the prior action were saved by Tenn. Code Ann. § 28-1-105(a)(2000)[1], but that any claims not asserted in the prior action were barred by the applicable statute of limitations.

Upon the case being reinstated on the docket, the Defendants filed a motion to dismiss asserting that the complaint

> fails to state a derivative cause of action . . . in that most all of the necessary elements of such an action are missing. In particular:

---

[1]Tenn. Code Ann. § 28-1-105(a) provides, in pertinent part, as follows:

> If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, . . . the plaintiff . . . may, from time to time, commence a new action within one (1) year after the [earlier judgment].

A. A derivative cause of action is available to shareholders to enforce a right of the corporation when the corporation has failed to enforce the right. The Complaint in this cause alleges no such right, nor the failure of the corporation to enforce.

B. Rule 23.06 requires that the Plaintiff allege with particularity the efforts made by Plaintiff to force the corporation to act, but there is no such allegation in the Complaint in this cause.

C. Plaintiff has failed to allege and show that he fairly and adequately represents the interests of the shareholders similarly situated as required by TRCP Rule 23.06.

The trial court dismissed the majority of the claims, but not on the grounds asserted in the motion to dismiss. Instead, the court found that the Grandson, as a matter of law, lacked standing to challenge transactions that happened before October 10, 2003, the date his father died, *i.e.*, the date on which the life estate in the stock ended. The trial court's ruling means that the contract with the Arboretum – which was executed during the Father's lifetime – was not subject to challenge by the Grandson. The court identified the issues remaining in the lawsuit as follows:

> The causes of action remaining for the Plaintiff to pursue are an accounting for the actions taken by the Board of Directors of the corporation in liquidating the corporate assets since October 10, 2003, and all pled causes of action related to selling the corporate equipment and personal property in December, 2004. Said accounting shall include all monies received after October 10, 2003, including but not limited to, monies received from the sale of the corporation's real property to Knoxville Botanical Gardens and Arboretum after October 10, 2003, as well as an accounting of the proceeds from all other corporate equipment and personal property sold in December, 2004. Said accounting shall be made in writing and shall be made available to Plaintiff. Plaintiff may make written objections to the accounting within thirty (30) days after receiving accounting and shall specify the basis of his objections. Plaintiff retains the right to pursue a cause of action as stated as to the selling of corporate equipment and personal property in December, 2004.

The Grandson filed a motion to alter or amend the order[2] granting, in part, the motion to dismiss. The Grandson's motion to alter or amend argued that it was procedural error for the trial court to order dismissal on a ground not raised in the motion. It also argued that, contrary to the court's ruling, the Grandson had standing prior to the Father's death. The trial court denied the motion in an order entered January 16, 2009.

In the meantime, the Defendants filed their "cash accounting" with the court on December 31, 2008. The Grandson did not file written objections within the 30-day deadline set by the court, but did oppose the Defendants' motion filed on March 25, 2009, to approve the accounting and seeking dismissal or summary judgment. The Grandson also filed a response to the Defendants' statement of material facts dealing with the accounting. The Grandson supported his response with his own affidavit. In essence, the affidavit complained that the accounting was nothing more than a checkbook ledger, not prepared according to generally accepted accounting principles, that did not furnish enough detail for the Grandson to be able to know whether or not the monies had all been accounted for and properly disbursed. The Grandson also argued that summary judgment should not enter on the basis of the accounting which was not sworn to. In an order entered June 23, 2009, the trial court treated the Grandson's objections as timely filed, but overruled them and approved the accounting. Consequently, the court dismissed the case in its entirety.

II.

In his timely-filed appeal, the Grandson raises two issues as set forth in his brief:

> Whether the Trial Court erred as a matter of law in dismissing . . . any claims asserted to have occurred prior to October 10, 2003 . . . based upon its determination that [the Grandson] lacked standing.
>
> Whether the Trial Court erred in approving [the] accounting and dismissing the case.

III.

The standard applicable to reviewing Tenn. R. Civ. P. 12 motions to dismiss has been stated as follows:

---

[2]The Grandson also asked the trial court for permission to take an interlocutory appeal.

> Such a motion tests only the legal sufficiency of the complaint, not the strength of the proof. The resolution of the motion is determined by an examination of the pleadings alone. For purposes of analysis, the motion contemplates that all relevant and material allegations in the complaint, even if true and correct, do not constitute a cause of action. In considering a motion to dismiss, courts must construe the assertions in the complaint liberally; the motion cannot be sustained unless it appears that there are no facts warranting relief. On appeal, all allegations of fact by the Plaintiffs must be taken as true. Our scope of review is de novo with no presumption of correctness.

*Highwoods Properties, Inc. v. City of Memphis*, 297 S.W.3d 695, 700 (Tenn. 2009)(citations omitted). The trial court's legal conclusions regarding the applicable law and the adequacy of the complaint are reviewed without a presumption of correctness. *Marceaux v. Thompson*, 212 S.W.3d 263, 267 (Tenn. Ct. App. 2006). Orders granting summary judgment are reviewed *de novo* to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004).

IV.

The Grandson's argument on the issue of standing, reduced to its essence, is that he became the vested owner of the stock at the death of the Grandmother since the Father's interest was limited to a life estate, something less than true ownership.[3] The Grandson uses, as the foundation for his argument, the proposition that when a testator bequeaths a remainder interest in property to a person in being with an intervening life estate to someone else, the remainder interest becomes vested at the testator's death. *See Guy v. Taylor*, No. 03A01-9101-CH-15, 1993 WL 360682 at *6 (Tenn. Ct. App. E.S., filed September 17, 1993)(*quoting Sands v. Fly*, 292 S.W.2d 706, 712 (Tenn. 1955)). The Defendants' argument against standing, reduced to its essence, is that a life tenant has the right to exclusive enjoyment, possession and use of the property and that is nothing less than ownership, at least during the lifetime of the life tenant. The Defendants rely upon, among other authorities, *Pritchett v. Nashville Trust Co.*, 36 S.W. 1064 (Tenn. 1896), to support their argument.

---

[3]The Grandson also argues that the trial court erred procedurally in dismissing the case upon a ground that was not set forth in the motion. Since we conclude that the Grandson had standing, at least under the allegations made in the complaint, we do not need to reach the procedural issue. Were we to address that issue, we would hold that the procedural error, if any, was harmless because the Grandson was able to be fully heard on the merits in his motion to alter or amend. *See* Tenn. R. App. P. 36(b).

We are persuaded, however, that Tenn. Code Ann. § 48-17-401 (2002 and Supp. 2009), which apparently was not called to the trial court's attention, gives the Grandson standing to challenge anything that happened in the time frame between the Grandmother's death and the Father's death. The statute states, in pertinent part:

> (a) A person may not commence a proceeding in the right of a domestic or foreign corporation unless the person was a shareholder of the corporation when the transaction complained of occurred or *unless the person became a shareholder through transfer by operation of law from one who was a shareholder at that time.*

> * * *

> (e) For purposes of this section, "shareholder" includes a beneficial owner whose shares are held in a voting trust or held by a nominee on the beneficial owner's behalf.

*Id.* (emphasis added). Assuming, for the sake of discussion, that the Grandson was not the shareholder but became a shareholder "by operation of law," we are of the opinion, and so hold, that, even if the Father was the shareholder at the time "the transaction complained of occurred," as the Defendants argue, the Grandson was granted standing by the italicized portion of the statute. A third possibility that the parties have not discussed is the possibility that the Grandmother's estate was the true owner and "stockholder" of the stock during the time that the Father held his life interest. *See* 7 A.L.R.3d 629, *Who May Exercise Voting Power of Corporate Stock Pending Settlement of Estate of Deceased Owner* § 2 (1966). Under that alternative scenario, the Grandson, even if he was not the true owner of the stock, also acquired it from "one who was a shareholder at [the] time" of "the transaction complained of."

The only question left to be answered is whether the acquisition by the Grandson from either the Father or the Grandmother's estate, was "by operation of law." The phrase "operation of law" is not defined in the statute. Our duty in determining the meaning of the phrase is as stated in **Eastman Chemical Co. v. Johnson**, 151 S.W.3d 503 (Tenn. 2004):

> Our duty in construing statutes is to ascertain and give effect to the intention and purpose of the legislature. Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle

construction that would limit or extend the meaning of the language.

*Id.* at 507 (citations and quotation marks omitted). "By operation of law" has a "natural and ordinary" enough meaning that is defined in Bouvier's Law Dictionary (3d revision, 1914). The definition is: "A term applied to indicate the manner in which a party acquires rights without any act of his own: as . . . when a lessee for life or years accepts a new lease or demise from the lessor, there is a surrender of the first lease by operation of law." *Id*. Our computerized search using the key phrase "operation of law" produced over 900 results using state cases and statutes as our database. While we did not by any means read all of the cases, our sampling confirms that the "natural and ordinary" usage is consistent with the dictionary meaning. We are particularly interested in whether or not the presence of a document, such as a will, precludes a person from acquiring rights by operation of law. We conclude that it does not. *See*, *e.g.*, **Lowry v. Lowry**, 541 S.W.2d 128, 132 (Tenn. 1976)(signature cards at bank created a joint bank account so that at the death of one, "the proceeds pass to the survivor by operation of law . . . .")(quoting 2 Pritchard, *Law of Wills and Estates* § 621(2d Ed. Phillips); **McRoberts v. Copeland**, 2 S.W. 133 (Tenn. 1886) (exception and reservation in deed created a life estate in both decedent and his wife which passed to her, "in her own right," by operation of law at his death).

Accordingly, we hold that even if the Grandson was not the actual owner of the stock at the time of the acts complained of, he did acquire the stock from either the estate of the Grandmother or the Father by operation of law. Either way, his predecessor was the stockholder at the time of the acts upon which he bases the complaint. It follows that the Grandson had standing under the statute to maintain a stockholder's derivative action for alleged wrongs that preceded the death of the Father.

We now turn to the issue of whether the trial court erred in approving the accounting and, in effect, granting the Defendants summary judgment on the "accounting" issue. Neither party has provided us with any law as to the proper function of an accounting and how this one compares to the norm. Accordingly, our remarks are made without reference to such standards. Rather, the Grandson argues that the accounting provided to and approved by the trial court is not even the type of evidence that would be admissible, much less the type of sworn, uncontradicted evidence to shift the burden to him to establish a factual dispute. The Defendants seem to argue that, first, the Grandson waived any objection by failing to timely make objections and, second, the objections the Grandson finally did make went only to form and not to substance, leaving the trial court free to approve the accounting as made.

We agree more with the Grandson's position. The objections the Grandson made were timely because the trial court extended the time for his objections and treated them as timely. Moreover, we do not believe that the Grandson's objections to the form of the accounting were something that the trial court was free to ignore. In essence, the Grandson was appropriately and correctly making the point that the unsworn and unsigned document proved nothing to be beyond dispute and there were still unresolved issues of facts to be explored as to the transactions made during the period in question. We are not deciding at this juncture exactly what form the accounting must take and how it must be verified and by whom. Rather, we are holding that the Grandson is correct that the unsworn and unsigned document did not shift the burden to him to come forward with facts to establish issues for trial. As the Supreme Court noted in **Martin v. Norfolk Southern Ry. Co.**, 271 S.W.3d 76 (Tenn. 2008):

> The moving party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *accord* **Penley v. Honda Motor Co.**, 31 S.W.3d 181, 183 (Tenn. 2000) . . . *See* **Staples v. CBL & Assocs., Inc.**, 15 S.W.3d 83, 88 (Tenn. 2000); **McCarley v. W. Quality Food Serv.**, 960 S.W.2d 585, 588 (Tenn. 1998). If the moving party fails to make this showing, then "the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails." **McCarley**, 960 S.W.2d at 588; *accord* **Staples**, 15 S.W.3d at 88.

*Id*. at 83. We have examined the document and note that, it is not only unsigned and unsworn to, it does not even identify the preparer or source of the information, nor does it state that it reflects all income and disbursements. Thus, in addition to a hearing with respect to transactions that occurred before the Father's death, the Grandson will be entitled to additional proceedings on the accounting for the time period after the Father's death.

V.

The judgment of dismissal is vacated. Costs on appeal are taxed to the appellees, Cheryl Ryerkerk, the Estate of Florence Howell Wallis, Carl Wallis, Margaret Ann Gehring and Howell Nurseries, Inc. This case is remanded, pursuant to applicable law, for further proceedings consistent with this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE