IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 9, 2010 Session

**TINA J. PARKS v. MID-ATLANTIC FINANCE COMPANY, INC.**

**Appeal from the Circuit Court for Knox County**
**No. 3-309-07     Wheeler A. Rosenbalm, Judge**

**No. E2009-02593-COA-R3-CV - Filed January 31, 2011**

Tina J. Parks ("the Buyer") purchased an automobile on an installment payment plan and signed a "Retail Installment Contract and Security Agreement" ("the Installment Contract") pledging the vehicle as collateral to the seller-lender, Chris Yousif dba Quality Motors ("the Seller"). Mid-Atlantic Finance Company, Inc. purchased the Seller's rights in the Installment Contract. Mid-Atlantic later informed the Seller when the Buyer fell behind on her payments. The Seller repossessed the vehicle. Mid-Atlantic sold its rights under the Installment Contract to the Seller. The Buyer then filed this action against the Seller and Mid-Atlantic on various theories. The trial court granted Mid-Atlantic summary judgment and dismissed the Buyer's claim against the company, finding that, as the purchaser of the Installment Contract, it had no duty to the Buyer. The Buyer appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

David B. Hamilton, Knoxville, Tennessee, for the appellant, Tina J. Parks.

John A. Walker, Jr., Knoxville, Tennessee, for the appellee, Mid-Atlantic Finance Company, Inc.

**OPINION**

I.

The Seller is a used car dealer in Knoxville. In addition to the name Quality Motor, the Seller uses the name Quality Motor, LLC, but there is no such entity. In August 2006,

the Seller sold the Buyer a 2006 Mercury Cougar, for approximately $9,000; $6,000 of the purchase price was financed. The Seller retained a lien that was noted on the title and the Buyer executed the Installment Contract. The Buyer was obligated by the Installment Contract to secure full insurance coverage on her car, which she did through State Farm Mutual Automobile Insurance Company.

The Seller, purporting to act as Quality Motor, LLC, sold its rights under multiple retail installment contracts, including the Installment Contract, to Mid-Atlantic. This transaction was dated September 6, 2006. The basic terms of the transaction were that Mid-Atlantic paid 76% of the face value of the various installment contracts to the Seller, and the Seller warranted that the contracts were not in default. Two provisions in the contract required the Seller to repurchase problem installment contracts. One provision, found in Paragraph IV, requires repayment to Mid-Atlantic of the unpaid balance with regard to any installment contract within 30 days of Mid-Atlantic's notice to the Seller that "any representation, warranty or covenant made by Seller is incorrect in any material respect." The other, found at Paragraph VII, gives Mid-Atlantic a 120-day window to "verify" each installment contract and demand that the Seller repurchase any "unverified" installment contract. Verification is the process of receiving acknowledgment and one payment from the obligor.

According to the allegations in the complaint, the Buyer did receive notice from Mid-Atlantic that it was the new holder of the lien on her automobile; she made at least one payment directly to Mid-Atlantic. Mid-Atlantic did not change the title to reflect that it was the lien holder nor did it notify any state agency that it was the lien holder instead of the Seller. The Seller demanded of the Buyer that she make payments directly to him, which she did at least once. The Buyer then contacted Mid-Atlantic and was told to make the payments directly to Mid-Atlantic and not to the Seller. The Buyer then stopped making payments to the Seller. Sometime in January 2007, prior to January 16, Mid-Atlantic informed the Seller that the Buyer was not current on her payments. The Seller had the vehicle repossessed on or about January 16, 2007. The Buyer contacted the local sheriff's office to report the vehicle as stolen. The vehicle was on the Seller's car lot, but the sheriff allegedly would not help the Buyer because the Seller was still listed as the lien holder. She also contacted Mid-Atlantic and was told that Mid-Atlantic did not authorize the repossession of the vehicle and that Mid-Atlantic had told the Seller that he should return the vehicle to the Buyer. Mid-Atlantic confirmed by letter to Buyer's counsel that Mid-Atlantic did not authorize the repossession and that Mid-Atlantic had told the Seller "that he should not have repossessed the vehicle and that he should return it to [the Buyer]." Mid-Atlantic also advised that it had informed the Seller that "he could by [sic] back the account ([Mid-Atlantic] does not desire to be a part to the litigation)." On or about January 23, 2007, Mid-Atlantic sent its "request that [the Seller] buy-back the [subject] account" by paying the sum of $3,906.10. According

to the allegations of the complaint, the Seller did repurchase the Installment Contract at a significant discount.

The Seller refused to return the vehicle to the Buyer. The Buyer made a claim to State Farm for theft of the vehicle. State Farm refused the claim. The Buyer alleges in her complaint that she lost her job as a result of the loss of the vehicle and that she has "suffered" emotional trauma, anxiety, nausea, sleeplessness and depression from the intentional conduct of the Seller.

In her complaint, the Buyer named State Farm, the Seller and Mid-Atlantic as defendants. Her claim against State Farm is based on alleged coverage under her automobile insurance policy. Her various counts against the Seller are conversion, slander of title, intentional infliction of emotional distress, wrongful repossession, invasion of privacy and conspiracy. Her counts against Mid-Atlantic are negligence in allowing the Seller to exercise the power of repossession, slander of title in allowing the Seller to be shown as the lien holder and in failing to have itself listed as the lien holder; wrongful repossession in allowing the Seller to act as Mid-Atlantic's apparent agent and in failing to control the Seller to prevent the repossession; invasion of privacy in disclosing to the Seller that the Buyer had made untimely payments; and conspiracy with the Seller in purporting to sell the Installment Contract back to the Seller after the fact of the repossession.[1] The Buyer demands from State Farm the value of the vehicle plus the costs of a rental car as well as attorney's fees and certain statutory penalties. From the Seller and Mid-Atlantic she demands $2,000,000 in compensatory damages and $20,000,000 punitive damages.

On August 24, 2007, the Buyer filed a motion for default judgment against Mid-Atlantic. The motion states that Mid-Atlantic was served with process on July 23, 2007, and "has failed to plead or otherwise defend." Mid-Atlantic filed its answer on August 31, 2007. The trial court denied the Buyer's motion for default judgment in an order entered September 4, 2007.

State Farm moved for summary judgment on the ground that there was no coverage under the policy for repossession of a covered vehicle. On or about February 6, 2008, the court entered summary judgment in favor of State Farm.

Mid Atlantic filed a motion for summary judgment supported by an affidavit stating that it played no role in the repossession and did not know of the Seller's intention or actions to repossess until they had taken place. The affidavit also states that it is customary and in

_____

[1]We have taken some liberties and read the allegations expansively to try to make logical sense of them.

fact universal practice for the assignee of a lien such as Mid-Atlantic to rely on the lien noted on the title by the seller-lender and not to reissue title with the name of the assignee listed as the lien holder. The expense of re-issuance is one factor for the practice.

On or about June 16, 2009, the Buyer filed a "Motion for Sanction" asking the court to sanction Mid-Atlantic for the failure of its corporate representative to appear at a deposition set by "notice" in Knoxville. The Buyer also challenged Mid-Atlantic's refusal to admit that it had produced all relevant documents. Mid-Atlantic's response to the request to admit was, "Not admitted. Mid-Atlantic has voluminous other records, almost all of which are not germane to the issues in this cause." Mid-Atlantic responded with regard to the notice of deposition that it is a Florida Corporation and its corporate representative should not be subject to attend a deposition in Knoxville based on notice. The court denied the Buyer's motion and quashed the notice of deposition.

The motion for summary judgment was scheduled for hearing on August 21, 2009, at which time the Buyer objected to the motion and asked that it be denied for failure to state the grounds with particularity. Mid-Atlantic asked for and was granted leave to file an amended motion. On or about August 27, 2009, Mid-Atlantic filed a detailed "Amended Motion for Summary Judgment." The amended motion discusses each claim in detail including the reasons Mid-Atlantic asserts the Buyer cannot recover against it even if all the factual allegations of the complaint are taken as true. The motion asserts that a recurring problem with the complaint is that all claims are founded upon the false premise that the assignee of a vehicle lien must re-record the lien in its own name.

Mid Atlantic asserts in its amended motion that by the express terms of Tenn. Code Ann. §§ 47-9-310(c) (2001 and Supp. 2010) and 55-3-124(2008) an assignee of a security interest can rely on the original recording of the security interest without the necessity of re-filing. Therefore, according to Mid-Atlantic, there could have been no duty to prevent the Seller from exercising rights as the record holder of the lien, no slander of title in allowing him to be reflected as the record lien holder, no wrongful repossession based on the mere failure to prevent the Seller from acting, and no wrongful act upon which to base a conspiracy in re-selling the rights under the Installment Contract back to Seller after the repossession. As to the invasion of privacy claim, Mid-Atlantic asserts that "Tennessee law expressly permits the conveyance of such credit information, *i.e.*, it is not 'confidential' information, because such information is easily available from other sources. ***Amarr Co. v. Depew***, 1996 WL 600330 (Tenn. App. 1996)."

Before Mid-Atlantic's amended motion was heard, the Buyer filed a motion to amend the complaint "to conform to the evidence, to correct misstatements, and to add additional claims which are fairly raised by the facts set forth in the original pleading." The Buyer also

filed a motion to strike Mid-Atlantic's amended motion for summary judgment. The trial court heard argument on the Buyer's motion to amend, as well as a motion to strike Mid-Atlantic's amended motion for summary judgment on the same day it heard argument on the motion for summary judgment as amended. The court granted summary judgment to Mid-Atlantic in an order that also certified the judgment as final pursuant to Tenn. R. Civ. P. 54.02.[2] In a separate order entered the same day as the order granting summary judgment, the court overruled the Buyer's motion to amend her complaint as well as her motion to strike the amended motion for summary judgment. The Buyer filed a timely motion to alter or amend the judgment as well as a motion for findings of fact and conclusions of law. The Buyer also filed a notice of appeal. The notice of appeal ripened when the trial court entered an order overruling the Buyer's motion to alter or amend as well as her motion for findings of fact. In the transcript of the hearing and findings incorporated into the order denying the motion to alter or amend, the court clarified its reasons for granting summary judgment to Mid-Atlantic. First, the court stated that Mid-Atlantic had "no obligation" or duty, to the Buyer. The court further stated:

> Now, it is true that in ruling upon summary judgments, the Court is expected to state "the legal ground" for the ruling. And that should be in the order. Mr. Walker didn't put that in the order that he supplied here and so any order that goes down today should recite the basis for the Court's ruling.
>
> With respect to the hearing that we had on the prior occasion here, I believe that I told counsel that I sustained both the motion to dismiss because the complaint in my judgment wholly failed to state a claim upon which relief could be granted and further that the affidavits that had been furnished to the Court by the parties to that point in this case negated any factual basis for concluding that Mid-Atlantic had anything to do with [the Seller's] attempted repossession of [the Buyer's] automobile. And so the motion for summary judgment was granted on that ground. And that finding and conclusion is reaffirmed.

II.

The Buyer has listed the following issues for appeal, most of which we have restated:

---

[2]The claims against defendant Yousif remain pending.

Whether the trial court erred in refusing to grant the Buyer's motion for default judgment.

Whether the trial court erred in allowing Mid-Atlantic to amend its motion for summary judgment to state the grounds with specificity.

Whether the trial court erred in holding that Mid-Atlantic had no duty to protect the Buyer from the repossession by the Seller.

Whether the trial court erred in granting summary judgment in favor of Mid-Atlantic.

Whether the trial court erred in refusing to allow the Buyer to amend her complaint against Mid-Atlantic.

Whether the trial court erred in failing to sanction Mid-Atlantic for discovery abuse.

III.

A.

We begin with the Buyer's argument[3] that the trial court erred in failing to grant her judgment against Mid-Atlantic by default. Buyer correctly points out that the Tennessee Rules of Civil Procedure carry force of law. *Tennessee Dept. Of Human Services v. Vaughn*, 595 S.W.2d 62, 63 (Tenn. 1980). She goes one step too far though in arguing that the 31st day after service of the complaint on Mid-Atlantic, she had the absolute "right" to a judgment by default. Her entire argument, based on the "plain language of Tenn. R. Civ. P." 55.01, is this: "The motion seeking the entry of default clearly reflects that [Mid-Atlantic] was served on July 23, 2007[; Mid-Atlantic] was in default on August 23, 2007. [The Buyer] clearly held the right to the entry of default." Since she was "entitled" to a default judgment, and Mid-Atlantic filed no motion for relief pursuant to Tenn. R. Civ. P. 60.02, she argues that she must prevail.

---

[3]Normally we set out the standards of review applicable to the appeal before we begin discussion of the issues, but this appeal better lends itself to identification of the standard of review as part of the discussion of each separate issue.

The "plain language" of Rule 55.01 shows that entry of default is permissive rather than mandatory. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, judgment by default *may* be entered . . ." *Id*. (emphasis added). We have held that the decision whether or not to grant a default judgment as well as the decision whether to grant relief from a default judgment is reviewed for abuse of discretion. *Patterson v. Suntrust Bank*, No. E2009-01947-COA-R3-CV, 2010 WL 1741377 at *3 (Tenn. Ct. App. E.S., filed April 30, 2010); *Pache Indus. v. Wallace Hardware Co.*, No. E2003-01483-COA-R3-CV, 2003 WL 22668854 at *2 (Tenn. Ct. App. E.S., filed Nov. 12, 2003). Implicit in this standard of review is the underlying proposition that the trial court has discretion to excuse an insignificant delay beyond the normal 30 days specified in Tenn. R. Civ. P. 12.01 for filing an answer. It is also clear that a trial court should exercise its discretion in favor of allowing a case to be heard on its merits. *Patterson*, 2010 WL 1741377 at *3. The Buyer filed her motion for default judgment the day after the technical 30 days specified in Rule 12.01 expired, and Mid-Atlantic filed its answer within seven days of the expiration of time. Unquestionably, the trial court acted within its discretion in denying the Buyer's motion for default judgment.

B.

The next issue we must address is whether the trial court erred in allowing Mid-Atlantic to amend its motion for summary judgment to state with specificity the basis of the motion. We have been furnished no standard of review by either party, but we hold that whether or not to allow amendment of a motion and reschedule the hearing on that motion is a matter within the discretion of the trial court. Therefore it is reviewed by us for abuse of discretion.

The Buyer's argument is difficult to comprehend and the part that is at least understandable is simply wrong. The Buyer argues that the trial court erred in allowing the amendment because "Tenn. R. Civ. P. Rule 56 should be read in accord with Tenn. R. Civ. Rule 59, Motion to Alter or Amend Judgment, in that multiple motions relying upon the same underlying facts known at the time of the filing are to be addressed in a single motion and therefore multiple motions are not allowed under the rules." The Buyer's argument fails in at least two respects. It fails to account for the difference between the purpose for motions for summary judgment and the purpose for post-judgment motions to alter or amend. The purpose of the former is to "provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no genuine dispute regarding material facts." *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). The purpose of the latter is "to prevent unnecessary appeals by providing trial courts with an opportunity to correct errors before a judgment becomes final." *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct.

App. 1998).  Because Rule 59 motions delay appeals and finality, successive Rule 59 motions are not allowed.  ***Albert v. Frye***,  145 S.W.3d 526, 528 (Tenn. 2004).

The Buyer's argument also fails to account for our previous holding in ***Crafton v. Van den Bosch***, 196 S.W.3d 767, 771 (Tenn. Ct. App. 2005), that the failure to prevail on one motion for summary judgment does not prevent a litigant from prevailing on a later motion for summary judgment.  It would make no sense to hold that a party forever loses any right to pursue a meritorious motion by first filing the motion in a form that contains a technical defect.  To do so would be contrary to the directive in Tenn. R. Civ. P. 1 that the "rules shall be construed to secure the just, speedy, and inexpensive determination of every action."  We therefore hold that the trial court did not abuse its discretion in allowing Mid-Atlantic to amend its motion for summary judgment to identify the basis for the motion with specificity, and in rescheduling the hearing on the motion.

C.

This brings us to the merits of whether or not the trial court erred in dismissing the case.  The trial court gave two reasons for the dismissal, i.e., that the allegations of the complaint failed to state a claim upon which relief could be granted and that Mid-Atlantic had established its right to summary judgment by negating any involvement in the repossession.  Each of the trial court's reasons constitute a conclusion of law, subject to *de novo* review with no presumption of correctness.  ***Marceaux v. Thompson***, 212 S.W.3d 263, 267 (Tenn. Ct. App. 2006)(legal conclusion regarding adequacy of the complaint); ***Blair v. West Town Mall***, 130 S.W.3d 761, 763 (Tenn. 2004)(summary judgment reviewed *de novo* as a question of law).

The trial court correctly determined that the outcome of this case turns on whether the assignee of a lien in an automobile has any duty to the debtor to remove the name of its assignor and have title re-issued with the assignee listed as the lien holder.  The negligence, slander of title, wrongful repossession and conspiracy counts against Mid-Atlantic are all based upon the premise that Mid-Atlantic was obligated to have title to the automobile re-issued with Mid-Atlantic named as the lien holder.  The failure to do that supposedly negligently opened the door for the Seller to slander the title and wrongfully repossess the vehicle.  If there was no duty, these claims fail as a matter of law.

The existence or lack of a duty is a question of law for the court.  ***Timmons v. Metropolitan Gov't.***, 307 S.W.3d 735, 741 (Tenn. Ct. App. 2009).  The trial court correctly determined that there cannot be a common law duty on the part of the assignee to re-issue title with a new lien holder because the law recognizes the right of the assignee to rely on the lien of its assignor without taking any further action.  A security interest in an automobile is

-8-

perfected by having a lien recorded on the title by the Department of Revenue. Tenn. Code Ann. § 55-3-123 (2008). An assignee of a lien in an automobile, at its election, is provided a mechanism for having its name reflected on the title in place of the assignor by Tenn. Code Ann. § 55-3-124(a)[4]. However, the failure to take that step does not result in a loss of perfection or priority. Subsection (b) of Tenn. Code Ann. § 55-3-124 states without qualification that "[t]he assignee of any lien shall be entitled to the same priority among the outstanding lienors and have all the other property rights as had formerly been held by the assignor." As stated in the broader general rule for perfecting security interests found at Tenn. Code Ann. § 47-9-310(c), "[i]f a secured party assigns a perfected security interest . . . a filing . . . is not required to continue the perfected status of the security interest against creditors of and transferees from the original debtor." According to an official comment to the text,

> subsection (c) applies to the assignment of a security interest perfected by . . . a certificate-of-title statute. Unless the statute expressly provides to the contrary, the security interest will

---

[4] The statute states, in pertinent part, that:

> Any person holding a lien or encumbrance upon a vehicle, other than a lien dependent solely upon possession, may assign title or interest in and to the motor vehicle to a person other than the owner, without the consent and without affecting the interest of the owner, of the registration of the vehicle, but, in this event, shall give to the owner a written notice of the assignment, and deliver to the assignee an assignment of the lien, which assignment shall be signed by the assignor and, if the original certificate of title be in the assignor's possession, it shall likewise be delivered to the assignee, who shall forward the assignment, together with the certificate of title and proper fee for the notation of a lien to the department, which shall note the new lien on the certificate of title in the place and stead of the lien shown in favor of the assignor and return the same to the assignee; provided, that if the original certificate of title is not in the possession of the assignor, the assignee shall forward the assignment, together with the fee for noting a lien on the certificate of title, to the department, which shall procure the certificate of title from the person in whose possession it is being held for the sole purpose of noting the new lien in the place and stead of the lien in favor of the assignor, and the department shall then return the certificate of title to the person from whom it was obtained and shall further notify the assignee of this lien that the lien has been noted on the certificate of title.

Tenn. Code Ann. § 55-3-124(a).

> remain perfected . . . even if the assignee takes no action to cause the certificate of title to reflect the assignment or to cause its name to appear on the certificate of title.

It is therefore clear to us that Mid-Atlantic, as the assignee of a perfected lien, did not have a duty to the Buyer to have Mid-Atlantic's name reflected as the holder of the lien. It would appear to us that the mechanism of having the assignee's name placed on the title is for the benefit of the assignee, and not the vehicle owner. We hold that the trial court committed no error in finding that Mid-Atlantic had no common law duty to the Buyer.

D.

As we have indicated above, this holding dooms the majority of the Buyer's claims as a matter of law. Without a duty to so record its name on the title as the lien holder, Mid-Atlantic can not have been negligent with regard to the repossession or with regard to the transaction with the Seller. There is no contention in this case that Mid-Atlantic was actually physically involved in the repossession. The idea that the Seller was somehow the apparent agent of Mid-Atlantic which makes Mid-Atlantic liable for wrongful repossession is built on the faulty premise that by allowing the Seller's name to remain on the title, Mid-Atlantic somehow held the Seller out as its agent. The slander of title claim must fail because it is based only on Mid-Atlantic's failure to remove the Seller's name from the title, and have its name recorded. The conspiracy claim must also fail because it is based upon the mistaken premise that it was a wrongful act for Mid-Atlantic not to have its name recorded on the title as the lien holder and that Mid-Atlantic compounded its wrongdoing by later selling the lien back to the Seller to cover up is wrongdoing.

E.

This leaves only the invasion of privacy claim. It is based upon the theory that Mid-Atlantic should not have communicated with the Seller about the Buyer's payment or lack thereof. Mid-Atlantic asserts that there can be no cause of action "because such information is easily available from other sources." There is no support in the record for such an assertion. Apparently, Mid-Atlantic wants us to take judicial notice of the proposition that a debtor's payment history on a private consumer transaction is public information, readily available to anyone. We decline the invitation to take judicial notice. *See* Tenn. R. Evid. 201. We note that Mid-Atlantic relies on *Amarr Co. v. Depew*, No. 03A01-9511-CH-00412, 1996 WL 600330 (Tenn. Ct. App. W.S., filed Oct. 16, 1996). *Amarr* does not support Mid-Atlantic's assertion. It is true that in *Amarr* this Court refused to find that readily available information was confidential information, but the basis for the finding that the information

was readily available was the testimony of witnesses. *Id*. at * 4-5. We have no such testimony in the present case.

Thus, we must look beyond Mid-Atlantic's request that we sweep this claim away with the others. Relying on ***Givens v. Mullikin***, 75 S.W.3d 383, 411 (Tenn. 2002), the Buyer defines invasion of privacy as an "unreasonable intrusion into . . . her private affairs." According to ***Givens***, "a cause of action may be stated where the plaintiff shows an intentional, and objectively offensive, interference with his or her interest in solitude or seclusion." *Id*. at 411. We hold that there could not have been an invasion of privacy as a matter of law under the facts as alleged. According to the Buyer's allegations, after the assignment to Mid-Atlantic, she made payments both to the Seller and to Mid-Atlantic. We believe, and so hold, that any objectively reasonable person would understand that under such circumstances, the payees are going to communicate regarding what payments have been made and to whom. The resulting communication cannot have been "objectively offensive." Therefore there was no error in the trial court's dismissal of the invasion of privacy claim.

F.

The next issue we will address is whether the trial court erred refusing to allow the Buyer to amend her complaint. The determination of whether to allow an amendment to the pleadings is left to the sound discretion of the trial court and reviewed on appeal for abuse of discretion. ***George v. Building Materials Corp***., 44 S.W.3d 481, 486 (Tenn. 2001). The substance of the proposed amendment is described by the Buyer as follows:

> The Amended Complaint did include a claim of Lender Liability, . . . and more clearly set forth *Respondeat Superior* liability. The Lender Liability claim is predicated on the bad faith, dishonest knowing, or reckless disregard of the debtor rights.

(Emphasis in original.) It is clear that the proposed amendment as described by the Buyer is nothing but a regurgitation of the same futile allegations we have already discussed. We conclude therefore that the trial court did not abuse its discretion in denying the Buyer's motion to amend.

G.

The final issue is whether the trial court erred in failing to sanction Mid-Atlantic for alleged discovery abuses. A trial court is given broad discretion over discovery matters,

including requests for discovery sanctions, and, on appeal, that discretion will not be disturbed absent an affirmative showing that the trial court abused its discretion. *Brooks v. United Uniform Co.*, 682 S.W.2d 913, 915 (Tenn. 1984). The Buyer has made no such affirmative showing. Other than complain that she did not get what she wanted from the trial court, the Buyer makes no showing whatsoever. She complains that Mid-Atlantic would not admit it had produced all its documents, but makes no showing why its statement that the documents it did not produce were "not germane" is inaccurate. She complains about Mid-Atlantic's failure to produce a corporate witness in Tennessee but makes no showing why it would have been unfair for her to travel to Florida to take the deposition. It is telling in our view that the Buyer's brief does not even articulate what the sanction should have been. We hold that the trial court did not abuse its discretion in denying discovery sanctions.

IV.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Tina J. Parks. This matter is remanded, pursuant to applicable law, for collection of costs assessed below and for further proceedings as necessary on the claims against the remaining defendant.

_____
CHARLES D. SUSANO, JR., JUDGE