# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 27, 2012 Session

# CAROL ANN GRAYBEAL v. HOWELL H. SHERROD, JR.

**Appeal from the Circuit Court for Washington County**
**No. 22609      Thomas R. Frierson, II, Chancellor**

---

**No. E2011-01825-COA-R3-CV-FILED-SEPTEMBER 27, 2012**

---

In 2003, Carol Ann Graybeal ("the Client") filed this action against her former attorney and lover, Howell H. Sherrod, Jr. ("the Lawyer"), after he refused to give her an accounting regarding an investment she had made through him. In response to her demand for an accounting, he had accused her of stealing and damaging property, the value of which allegedly exceeded the value of her investment. In the answer later filed to her suit, he demanded a setoff; his answer was joined with a counterclaim seeking relief with respect to the stolen and damaged goods. Six years later, the case came on for trial. The court entered its first judgment on April 23, 2010 ("the April 2010 judgment"). The court found in favor of each of the parties regarding various of their respective claims, with the result that the Lawyer received a net judgment of $10,760.13, before interest. The Client filed a motion to alter or amend the April 2010 judgment. The court entered a second, almost identical, judgment on September 15, 2010 ("the September 2010 judgment"), in which it denied the Client's motion. The Lawyer later filed a motion for discretionary costs as well as a motion to alter or amend the September 2010 judgment. In March 2011, the Client filed a motion for relief from the September 2010 judgment. In an order entered August 5, 2011 ("the August 2011 judgment") and designated as "final," the court granted the motion for discretionary costs in part, denied the Lawyer's motion to alter or amend, and granted the Client's motion for relief with respect to the calculation of prejudgment interest and the taxing of costs. The Lawyer appeals from the August 2011 judgment. The Client attempts to raise several issues of her own. We conclude that the merits of one of the earlier judgments – the September 2010 judgment – are not before us because what the Lawyer has labeled as a "motion to alter or amend" that judgment is not, despite its label, one of the motions recognized by Tenn. R. Civ. P. 59.01 as having the effect of "extending the time for taking steps in the regular appellate process." We find no reversible error in the August 2011 judgment. Accordingly, we affirm that judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P.
FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Thomas C. Jessee, Johnson City, Tennessee, for the appellant, Howell H. Sherrod, Jr.

Edward Kershaw, Greeneville, Tennessee, for the appellee, Carol Ann Graybeal.

**OPINION**

I.

This case, from its inception and through the culmination of this appeal, is essentially
about revenge. The parties were lovers. To make matters worse, the male was the female's
lawyer during either part of the "love" affair or shortly before it began. Throughout the
affair, the Client was married and the Lawyer knew it. He claims she told him throughout
the duration of their sexual relationship that she was going to divorce her husband and marry
him. The relationship lasted from 1995 through 2001 if you believe the Client, or from 1996
to 2000 if Lawyer is to be believed. This action was originally filed on May 16, 2003. It
went to trial more than six years later, on November 9, 2009. Multiple post-trial motions
delayed the case another two years.

Between them, the parties list sixteen issues for appeal. As the reader will discover,
the procedure by and through which the August 2011 judgment came to be entered is
dispositive of most of the issues relied upon by the parties. Accordingly, we will not attempt
at this point to construct a comprehensive statement of the evidence. Instead, we will work
our way through the procedural maze and trust that the reader is appropriately oriented to the
case after reading the following brief "factual background" recited by the trial court in its
initial memorandum opinion filed March 4, 2010:

> In approximately 1994, [the Lawyer], a practicing attorney in
> Johnson City, Tennessee, began a professional, business
> relationship with [the Client]. His representation of her included
> various matters. The two also participated together in the
> purchase of various bank securities. At times, [the Lawyer]
> would group investments of other persons with that of [the
> Client] for a combined purchase of multiple shares of stock.
> Several of these investments resulted in a profit to [the Client].

-2-

In 1995, [the Lawyer] loaned [the Client] $10,000 with reference to a certain matter involving J. C. Bradford & Co. Securities. The loan was never repaid.

In approximately 1996, [the Client] and [the Lawyer] developed a personal, intimate relationship. On August 23, 1996, [the Lawyer] purchased an engagement ring for [the Client] at a cost of $8,093. [The Lawyer] presented and delivered the ring to [the Client] which she wore on at least one occasion in Atlanta, Georgia.

As [the Lawyer] continued to invest funds of several individuals in the purchase of various stocks, [the Client] expressed her desire that she be permitted to participate as well. On November 7, 1997, she transferred to [the Lawyer] the amount of $50,000 for the purpose of purchasing certain stock in Texas Biotechnology Corp. carrying the trade symbol of TXBI.

On November 10, 1997, [the Lawyer] purchased 16,000 shares of TXBI stock for a total cost of $99,000. The purchased securities were placed in his name. The funds used for the stock acquisition included $45,000 of [the Client's] initial investment through [the Lawyer] as well as $54,000 from other investors. [The Client's] 45.46% ownership interest in the 16,000 shares yielded her an ownership of 7,273.60 shares.

The stock performed well initially. During 1999, [the Lawyer] made three distributions to [the Client] of $5,000 each with reference to the TXBI stock. The parties do not dispute that payments were made on January 28, 1999, June 8, 1999 and December 3, 1999.

By 2001, the personal relationship between [the Lawyer] and [the Client] had begun to deteriorate. As the value of the TXBI stock had declined and in an effort to minimize [the Client's] losses, [the Lawyer] sold her remaining shares of the stock on September 21, 2001 for a price of $5.21 per share. The net yield in favor of [the Client], after sales commission, was $37,876.52. In December 2001, [the Client] contacted [the Lawyer] in writing requesting both an accounting of the stock transaction and the

return of her money. In response to [the Client's] request, [the Lawyer] indicated that by reason of her vandalism and theft, [to be discussed later,] as well as other monies owed to him, no distribution would be made to her. [The Client] subsequently instituted [this] action . . . on June 6, 2003.

(Footnotes in original omitted.)

The court next addressed the Client's claims against the Lawyer with regard to the TXBI stock. It found that

> . . . . [t]he evidence . . . does not support a finding that the [the Client] instructed [the Lawyer] in 2000 to sell the stock. Instead, [the Lawyer], through good faith and fair dealing and in an effort to minimize [the Client's] losses when the value of the stock was declining, sold same in September 2001 for a net yield of $37,876.52.
>
> Although [the Lawyer] breached no duty of good faith and fair dealing with respect to the timing of the sale of [the Client's] stock, his failure to return [the Client's] net investment following liquidation constituted a breach of the parties' oral agreement. As such, [the Client] is entitled to an award against [the Lawyer] in the amount of $42,897.54 constituting the net sale proceeds from the sale of the TXBI stock and the unused $5,000 retained when the stock was originally purchased.

The court then turned to the various claims asserted by the Lawyer. The court found that the Lawyer did not prove his claims for extortion, intentional infliction of emotion distress, and invasion of privacy. The court found that the Lawyer did establish his claims with respect to some property he alleged the Client had either taken or damaged. The court found that the ring the Lawyer gave the Client was a conditional gift made in contemplation of marriage. The court found that since both parties claimed they did not know the whereabouts of the ring, the Lawyer was entitled to recover its value, which the court set at $8,093 based upon the purchase price of the ring. The court also found that the Lawyer was entitled to recover $10,564.67 for "other missing and/or damaged items." The court further found that "[the Lawyer] is entitled to repayment of the $10,000 loan he made in 1995." Finally, the court found that the Client had trespassed upon the Lawyer's property by breaking into the automobile of the Lawyer's secretary/new lover to steal her purse while the car was parked at his home. The court awarded $25,000 in damages for the trespass.

-4-

The parties stipulated during the trial that the court could consider whether to award an injunction against either or both parties. The court found that the Lawyer had proven a basis for a permanent injunction against the Client but that the Client had shown no justification for an injunction against the Lawyer.

The court also considered whether it should levy sanctions against the Lawyer and his counsel. The court found "that neither [the Lawyer] nor his attorney committed any sanctionable abuse of the discovery process by reason of allegations contained in the pleadings, inspection of documents or the nature and/or duration of questioning during depositions."

The various findings resulted in a *net* recovery to the Lawyer of $10,760.13, before prejudgment interest. The court found that both parties "are entitled to prejudgment interest on their respective monetary awards at the rate of five (5)% per annum from September 2001." Further the court declined to award attorney's fees to the Client. The court directed counsel for the Lawyer to prepare a judgment in accordance with the memorandum opinion.

Before the court could enter its judgment, the Client filed a motion to alter or amend. She argued that the court had previously granted summary judgment in favor of the Client holding some of the Lawyer's claims were barred by the statute of limitations. Further, she asserted that the court erred when it awarded damages to the Lawyer without designating whether they were in the nature of a set off or a counterclaim. She argued that any and all claims asserted by way of counterclaim were barred by the statute of limitations. The court filed a short supplemental memorandum opinion stating that the court would hold a hearing on the Client's motion after entry of the judgment.

The next thing that happened was entry of the April 2010 judgment as contemplated by the memorandum opinion of March 4, 2010. The judgment noted the pending motion of the Client to alter or amend and stated that a hearing would be scheduled on that motion. Within 30 days of the entry of the April 2010 judgment, the Client filed another motion to alter or amend pursuant to Tenn. R. Civ. P. 59.04. The second motion essentially renewed the argument made in the motion to alter of amend filed before the entry of the judgment, *i.e.*, that some or all of the Lawyer's claims were not in the nature of a setoff and were barred by the statute of limitations. The Lawyer also filed a motion to alter or amend, although he called it a "motion to enter a final judgment."[1] The Lawyer's motion included an attached proposed judgment. His proposed judgment was dissimilar in a number of respects to the court's entered judgment of April 2010. Among the changes incorporated into the Lawyer's proposed

---

[1]We must consider the substance of the motion rather than the label a party gives it. **Bemis Co. v. Hines**, 585 S.W.2d 574, 576 (Tenn. 1979); **Starks v. Browning**, 20 S.W.3d 645, 652 (Tenn. Ct. App. 1999).

judgment was a credit in the amount of $15,000 for the payments characterized as distributions to the Client in the court's initial memorandum opinion.

The court issued a memorandum opinion on August 19, 2010, which states that the Client's motion to alter or amend should be denied for the following reasons:

> The [Client] argues that all of [the Lawyer's] claims upon which monetary damages have been awarded are barred by applicable statutes of limitations. Pursuant to the Final Judgment in this cause, [the Lawyer] was awarded, *inter alia*, monetary damages by reason of missing and damaged property as well as trespass. The applicable statue of limitations for such property tort claims is T.C.A. 28-3-105. This Court previously determined by Order entered October 9, 2008, that any property tort claims based on actions occurring prior to August 12, 2002 were time barred.

> The Court has carefully considered the evidence in the case at bar. The evidence preponderates in favor of a finding that [the Lawyer's] claims were timely filed in accordance with the applicable statutes of limitation.

> [The Client] argues that the total [setoff] award in favor of [the Lawyer] may not exceed the award granted to her. The [Client] further asserts that the monetary award in favor of [the Lawyer] by reason of trespass may not be setoff as a matter of law.

> [The Lawyer's] Amended Answer was filed on August 12, 2005. This responsive pleading recited certain language from his original Answer, in pertinent part as follows: "Defendant demands the complaint heretofore filed against him be dismissed in its entirety and that he be awarded judgment reflecting his right of setoff and recoupment for property damage, compensatory damages and punitive damages . . . ." The Amended Answer further contained allegations asserting a counter-complaint. The counter-complaint made no reference to setoff or recoupment.

> By Order entered February 17, 2006, the Court directed, *inter alia*, that [the Lawyer] could proceed on his counter-complaint in the capacity as a plaintiff while [the Client] had pleaded a

counterclaim. By Order entered March 6, 2008, the Court, *inter alia*, directed that claims asserted by [the Lawyer] through his counterclaim were the claims which were pending against [the Client].

\* \* \*

In the case at bar, [the Lawyer] has been awarded compensatory damages upon his claim as Plaintiff, while [the Client] has been awarded monetary damages upon her counterclaim. As a basis for equitable setoff, this Court directs that the total monetary award granted in favor of [the Client] shall be setoff against the total monetary award granted in favor of [the Lawyer].

\* \* \*

[The Client] argues that as the Judgment in this case awarded [the Lawyer] prejudgment interest with regard to the damages relative to trespass, such award should not be allowed. . . .

In the case at bar, this Court has determined that the trespass for which [the Client] is liable in damages was with reference to [the Lawyer's] property, not his person. "A trial court's decision of whether to award prejudgment interest or not on an unliquidated claim is largely within its discretion," ***Seay v. County of Shelby***, 672 S.W.2d 404 (1984). Based upon the foregoing analysis, this Court concludes that the award of prejudgment interest in favor of [the Lawyer] . . . is appropriate.

(Headings omitted.) The memorandum opinion of August 19, 2010, did not address the Lawyer's motion, which, as previously noted, attempted to persuade the court to enter a modified judgment to take the place of the judgment of April 2010.

The court subsequently entered the September 2010 judgment setting the net judgment in favor of the Lawyer, including prejudgment interest, at $16,693.13. The judgment also recited that the "Defendant's" motion to alter or amend was denied. The court did not expressly mention the Lawyer's motion to enter an amended judgment; it, however, essentially denied the motion by implication when it entered a judgment that did not include the requested modifications to the April 2010 judgment.

The Lawyer then filed a "motion to compel payment of expenses." The motion was in substance a motion for discretionary costs pursuant to Tenn. R. Civ. P. 54.04(2). On October 14, 2010, the Lawyer filed his second motion asking that the court correct the judgment to reflect credits for $15,000 in payments to the Client before the stock was sold. The motion also asserted that the Lawyer had discovered new evidence showing that the Client was continuing her harassing actions against him, contrary to what she had stated at trial, and that the new evidence justified re-opening the proof to establish a causal connection between the harassment and his alleged expenditure of over $30,000 on a security system.

The court issued a supplemental memorandum opinion on February 14, 2011, in which it discussed the issues raised in the Lawyer's motion for discretionary costs and his motion to alter or amend. With regard to credit for the $15,000 in payments, the court stated that its findings on the issue were supported by a preponderance of the evidence and that in its initial memorandum opinion of March 4, 2010, it "specifically addressed the $15,000 distributed by [the Lawyer] to [the Client] in payments of $5,000 each beginning January 28, 1999 and ending December 3, 1999." The court further stated that the Lawyer had not shown sufficient grounds for reopening the proof with regard to the alleged justification for the security system. As to discretionary costs, the court determined that "all discretionary costs identified in the verified motion should be divided equally between the parties."

On March, 2, 2011, the Client filed a motion for Rule 60 relief or alternatively for Rule 59 relief in which she raised three issues. Paraphrased, those issues are: (1) whether the court in its September 2010 judgment intended to award compound prejudgment interest; (2) whether the latest memorandum opinion intended to designate the Client as the "Defendant" in awarding costs; and (3) what was the exact amount of discretionary costs to be divided.

The court entered the August 2011 judgment in which it addressed all pending issues and into which it incorporated its most recent memorandum opinion. It denied the Lawyer's motion to alter or amend including the motion to reopen the proof. It granted the Lawyer's motion for discretionary costs in part but, pursuant to the Client's last motion for post-judgment relief, set the amount at $5,935.37, to be divided equally. The court found the Client's motion to be well taken with respect to the issue of compounding prejudgment interest. It modified the judgment to "reflect simple interest of $4,842." The court clarified the taxing of costs by stating that "costs shall be taxed to [the Lawyer] for the period from April 23, 2010 through February 14, 2011." As a "bottom line," the court held that "[t]he Final Judgment is hereby modified to reflect that [the Lawyer] is awarded a total judgment against [the Client] of $10,760.13 plus $4,842 (simple interest) plus $2,967.69 (discretionary costs) for a total effective Judgment as of this date of $18,569.82."

The Lawyer filed a notice of appeal on August 24, 2011. The notice states that the Lawyer appeals "from the Order entered in this cause of action on the 5th day of August 2011."

## II.

## A.

The issues the Lawyer purports to raise are:

> Did the trial court err in failing to award [the Lawyer] additional damages in the amount of $15,000 which was a specific credit due [the Lawyer] stipulated to by the parties during the trial?

> Did the trial court err in its computation of statutory interest on the damages awarded and should the award include statutory interest on the amount of interest awarded in the judgment?

> Was it an abuse of discretion to not allow [the Lawyer] to offer proof concerning additional damages which was mistakenly omitted in [the Lawyer's] case in chief but was later offered in trial over [the Client's] objection?

> Was it an abuse of discretion to order [the Lawyer] to pay any part of the costs given the fact that [the Client] took a non-suit on her original complaint and was not successful on any claim other th[a]n that stipulated by [the Lawyer] ?

## B.

The Client lists the following issues of her own:

> Whether each and every one of the claims asserted by the [the Lawyer] are barred by the applicable statute of limitations.

> Whether there is an exception to the statute of limitations that could be claimed under the defensive theories of set off or recoupment and [whether] it [can] exceed [the Client's] award.

Whether, even if there was an exception to the limitation period, . . . set off and/or recoupment [would] even apply in this case.

Whether [the Client] should be entitled to the proceeds from the sale of certain stock from the time she requested the sale plus interest thereon or based on the highest price for which [the Lawyer] in fact sold some of the stock.

Whether [the Client] should be entitled to all of the proceeds from the actual sale of her alleged stock plus interest thereon.

Whether [the Client] should be entitled to a return of her $5,000 that was not invested plus the interest thereon since it was placed in an interest bearing account.

Whether, even without a statute of limitations argument, . . . [the Lawyer] [has] proved that he is entitled to recover anything under any theory . . . .

Whether [the Lawyer's] cause of action concluded on August 11, 2005 when [the Client] took a voluntary non-suit.

Whether [the Lawyer] and/or his attorney should be sanctioned for multiple discovery abuses, including, intentionally turning off [the Client's] attorney's phone so that her attorney could not communicate with [the Client].

[Whether] . . . [the Lawyer] [is] entitled to a restraining order.

[Whether] . . . [the Lawyer] [is] entitled to recover under multiple theories including trespass and conversion or must he elect a single remedy.

[Whether] . . . [the Lawyer] is entitled to the $10,000 that he claims to have given [the Client] in 1995.

III.

A.

Before we begin addressing the merits of any of the recited issues, we must identify what is properly before us on appeal from the August 2011 judgment and what, more importantly, is not properly before us. Although the parties purport to raise a host of issues that relate back to errors allegedly made in the April 2010 judgment and the September 2010 judgment, we conclude that the only matters that are properly before us on appeal are the modifications to the September 2010 judgment made in the August 2011 judgment. This is because (1) the September 2010 judgment is a final judgment that became unappealable on the 31st day after its entry and (2) the Client's March 2011 motion for relief from the judgment must be treated as a motion for relief from a final judgment pursuant to Tenn. R. Civ. P. 60, rather than a motion pursuant to Tenn. R. Civ. P. 59.

It is incumbent on this court to examine our jurisdiction to review a judgment even if the parties do not raise the issue. *In re Estate of Boykin*, 295 S.W.3d 632, 635 (Tenn. Ct. App. 2008). A timely notice of appeal is jurisdictional and cannot be waived. *Id.*

Before we move to the particulars of the present case, it is important to review the nature of a final judgment, and the means by which parties can seek relief from judgments. Our Supreme Court recently provided a refresher on those concepts in *Discover Bank v. Morgan*, 363 S.W.3d 479 (Tenn. 2012). In pertinent part, it stated:

> As the circumstances of this case illustrate, confusion may arise as to which procedural rule governs motions to set aside previous trial court decisions. In order to resolve this confusion, we take this opportunity to consider each rule available to parties seeking relief from previous trial court decisions and to explain the stage of the proceedings at which each of these rules applies.
>
> *   *   *
>
> Pursuant to Tennessee Rule of Civil Procedure 54, "any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties." Tenn. R. Civ. P. 54.02; *see also* Tenn. R. App. P. 3(a) ("[A]ny order that adjudicates fewer than

-11-

all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment[2] adjudicating all the claims, rights, and liabilities of all parties."). Thus, motions seeking relief from a trial court's decision adjudicating fewer than all the claims, rights, and liabilities of all the parties, should be filed pursuant to Rule 54.02.

\* \* \*

Tennessee Rule of Civil Procedure 59 expressly authorizes four categories of motions: "(1) under Rule 50.02 for judgment in accordance with a motion for a directed verdict; (2) under Rule 52.02 to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (3) under Rule 59.07 for a new trial; or (4) under Rule 59.04 to alter or amend the judgment." Tenn. R. Civ. P. 59.01. Furthermore, the specified motions are the only means "for extending the time for taking steps in the regular appellate process." *Id*.; *see also* Tenn. R. App. P. 4(b).

Rule 59.02 provides that "[a] motion for new trial and all other motions permitted under this rule shall be filed and served within 30 days after judgment has been entered in accordance with Rule 58." Tenn. R. Civ. P. 59.02. Rule 58 states in relevant part: "Entry of a judgment or an order of final disposition is effective when a judgment containing one of the following is marked on the face by the clerk as filed for entry. . . ." Tenn. R. Civ. P. 58. Reading Rule 59.02 in conjunction with Rule 58, it is clear that

---

[2]Consistent with prior Tennessee decisions, "final judgment" has two meanings in our discussion. First, with respect to Rules 54.02 and 59, "final judgment" refers to a trial court's decision adjudicating all the claims, rights, and liabilities of all the parties. *See* Tenn. R. App. P. 3(a); *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) ("A final judgment is one that resolves all the issues in a case, 'leaving nothing else for the trial court to do.'") (*quoting State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)). In the discussion of Tennessee Rule of Civil Procedure 60, "final judgment" refers both to a decision adjudicating all the claims, rights, and liabilities of all the parties *and* to the fact that more than thirty days have passed since the final judgment was entered. *See Campbell v. Archer*, 555 S.W.2d 110, 112 (Tenn.1977) ("The function of [Rule 60.02] is to give relief from *final* judgments; Rule 59, providing for motion for new trial, is the appropriate remedy for asserting alleged errors affecting a judgment which has not yet *become final*." (emphasis added)).

Rule 59 motions relate to final judgments – judgments adjudicating all the claims, rights, and liabilities of all the parties. *See* **Harris v. Chern**, 33 S.W.3d 741, 743–44 (Tenn. 2000) ("Rule 59.04 addresses final judgments and requires a motion to alter or amend to be made within 30 days of the entry of judgment."). "The purpose of Tenn. R. Civ. P. 59 motions is to prevent unnecessary appeals by providing the trial courts with an opportunity to correct errors *before a judgment becomes final*." **Bradley v. McLeod**, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998) (emphasis added), *overruled on other grounds by* **Harris**, 33 S.W.3d at 744. Thus, for thirty days after entry of a final judgment, motions for relief should be premised upon Rule 59.

In the event that a party waits to seek relief for more than thirty days after entry of a final judgment, the trial court cannot grant relief under Rule 59. *See* Tenn. R. Civ. P. 59.02. After this time, relief must be sought pursuant to Tennessee Rule of Civil Procedure 60.02. *See*, *e.g.*, **Campbell v. Archer**, 555 S.W.2d 110, 112 (Tenn. 1977) ("The function of [Rule 60.02] is to give relief from *final* judgments; Rule 59, providing for motion for new trial, is the appropriate remedy for asserting alleged errors affecting a judgment which has not yet *become final*." (emphasis added)). Rule 60.02 states in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a *final* judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not

more than one year after the judgment, order or proceeding was entered or taken. A motion under this Rule 60.02 does not affect the finality of a judgment or suspend its operation, but the court may enter an order suspending the operation of the judgment upon such terms as to bond and notice as to it shall seem proper pending the hearing of such motion.

Tenn. R. Civ. P. 60.02 (emphasis added).

*Discover Bank*, 363 S.W.3d at 488-89 (emphasis in *Discover*; our footnote 2 is in original as footnote 17; other footnotes in original omitted); *see Byrnes v. Byrnes*, No. E2011-00025-COA-R3-CV, 2012 WL 1664014 at * 4-6, 9 (Tenn. Ct. App. E.S., filed May 14, 2012).

Application of the above principles yields the following conclusions. There was a final judgment entered in this case in April 2010 which was re-affirmed in the September 2010 judgment by the denial of the Client's motion to alter or amend. *The September judgment was not timely appealed by either party*. The Lawyer's motion to alter or amend was untimely because it was not filed within 30 days of the April 2010 judgment. The September 2010 judgment was modified on August 5, 2011, pursuant to the Client's motion that must be treated as made pursuant to Tenn. R. Civ. P. 60.02. The Lawyer's motion for discretionary costs did not arrest the finality of the September judgment. *Roberts v. Roberts*, No. E2009-02350-COA-R3-CV, 2010 WL 4865441 at *8 (Tenn. Ct. App. E.S., filed Nov. 29, 2010).

We will review the pertinent chronology with exact dates. The April 2010 judgment was entered on April 23, 2010. It disposed of all claims against all parties. On May 21, 2010, the Client filed a timely motion to alter or amend that judgment in several respects. On June 4, 2010, the Lawyer filed an *untimely* motion to alter or amend, disguised as a motion to enter a final judgment as modified by the Lawyer. On September 15, 2010, the court entered its September 2010 judgment in which it denied the Client's motion to alter or amend, and impliedly denied the Lawyer's motion. The September 2010 judgment was in substance a reiteration of the April 2010 judgment with a hand-written notation denying the "Defendant's" motion to alter or amend. On October 14, 2010, the Lawyer filed his own motion to alter or amend. On March 2, 2011, after the court released its memorandum opinion in February, the Client filed her motion "for Rule 60.02 relief or alternatively Rule 59.04 relief." The court denied the Lawyer's motion and granted the Client's latest motion in part in the August 2011 judgment entered August 5, 2011. It is that order from which the Lawyer has appealed.

Had the September 2010 judgment altered the April 2010 judgment in a manner adverse to the Lawyer, it would have had the effect of starting the time anew for filing a timely motion pursuant to Tenn. R. Civ. P. 59. *Albert v. Frye*, 145 S.W.3d 526, 528 (Tenn. 2004), *see Ball v. McDowell*, 288 S.W.3d 833, 838 (Tenn. 2009) ("We conclude that when consecutive 'final' judgments are entered, a subsequent entry of judgment operates as the final judgment only if the subsequent judgment affects the parties' substantive rights or obligations settled by the first judgment."). However, because the September 2010 judgment did not adversely change the original April 2010 judgment vis-a-vis the Lawyer, the September 2010 judgment became immune from Tenn. R. Civ. P. 59 alteration and subject to alteration only pursuant to Rule 60. *See id.* The result is that the Lawyer's motion to alter or amend filed on October 14, 2010[3], was ineffective to toll the time for filing a notice of appeal because it was filed more than 30 days after entry of the April 2010 judgment. *Gassaway v. Patty*, 604 S.W.2d 60, 61 (Tenn. Ct. App. 1980)(the time for "all parties" for filing a notice of appeal runs from the first order denying a Rule 59 motion). *Gassaway* has come to stand for the proposition that all such motions must be timely filed from the date of the judgment to be altered and that successive Rule 59 motions are not allowed. *See also Parks v. Mid-Atlantic Finance Co.*, 343 S.W.3d 792, 799 (Tenn. Ct. App. 2011)(*citing Albert* for the same proposition). The one exception that has been allowed is the one in *Albert* where one party files a Rule 59 motion upon which the court essentially enters a new judgment, forcing the adverse party to then seek correction of that new judgment. That is not what happened in the present case.[4]

---

[3]We are mindful that the Lawyer filed a motion to enter a modified judgment before the court entered its September 2010 judgment. There are two impediments to treating it as a motion that ultimately stayed the time for filing a notice of appeal. One, it was filed on June 4, 2010, more than 30 days after entry of the April 2010 judgment. Second it was denied by implication upon entry of the September 2010 judgment. Thus, the similar motion filed after entry of the September judgment became a forbidden, successive Tenn. R. Civ. P. 59 motion.

[4]Arguably, the Lawyer's motion to alter or amend could be treated as a motion for relief from the September 2010 judgment pursuant to 60.02, thus allowing review of the denial of that motion in the August 2011 judgment under the heightened standards applicable to Tenn. R. Civ. P. 60.02 motions. That would not change the result as we would not find an abuse of discretion in the trial court's denial of that motion. The trial court impliedly determined that the Lawyer was not entitled to the $15,000 credit in the September 2010 judgment by entering a judgment that did not allow the credit. The court explicitly denied the motion in the August 2011 judgment, saying that it had already considered the issue. As we explained in *Willis v. West*, No. W2011-01856-COA-R3-CV, 2012 WL 2904035 at *6 (Tenn. Ct. App. W.S., filed July 17, 2012), the remedy for a matter that has already been litigated and determined incorrectly by the trial court is an appeal rather than successive post-trial motions.

Accordingly, we will not go behind the August 2011 judgment to examine the merits of the September 2010 judgment that became unappealable. This determination eliminates from our consideration all issues except those modifications in the August 2011 judgment that were made pursuant to the Client's motion of March 2, 2011. Because our determination is based on the finality of the September 2010 judgment and the lack of a timely appeal from that judgment, our holding applies equally to the issues raised by the Client. In other words, the judgment became final against the Client just as it became final against the Lawyer. The result is that only the second issue and the fourth issue raised by the Lawyer are properly before us.

B.

It is important that the court did modify the September judgment in several respects in response to the Client's motion filed on March 2, 2011. As we have stated, the Client's belated motion cannot be treated as a Rule 59 motion. Pursuant to the teachings of ***Discover Bank***, and our own opinion in ***Byrnes***, it must be treated as a motion for relief from the September 2010 judgment made pursuant to Tenn. R. Civ. P. 60.02. Our review, therefore, is pursuant to the standard of review articulated as follows in ***Discover Bank***:

> . . . . We . . . review for abuse of discretion a trial court's ruling on a Rule 60.02 motion for relief from a final judgment, ***Henry v. Goins***, 104 S.W.3d 475, 479 (Tenn. 2003) . . . .
>
> Abuse of discretion is found " 'only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party.' " ***State v. Jordan***, 325 S.W.3d 1, 39 (Tenn. 2010) (*quoting* ***State v. Banks***, 271 S.W.3d 90, 116 (Tenn. 2008)). The abuse of discretion standard does not permit an appellate court to merely substitute its judgment for that of the trial court. *See* ***Eldridge v. Eldridge,*** 42 S.W.3d 82, 85 (Tenn. 2001); ***Henry***, 104 S.W.3d at 479. Instead, "[u]nder the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made.' " ***Eldridge***, 42 S.W.3d at 85 (*quoting* ***State v. Scott***, 33 S.W.3d 746, 752 (Tenn. 2000)).

***Discover Bank***, 363 S.W.3d at 487.

-16-

The Lawyer argues that the trial court erred in the August 2011 judgment by modifying the September 2010 judgment to delete compound interest. The September 2010 judgment set the total interest due the Lawyer at $5,933. It arrived at this figure by compounding the interest from year to year. The first year the court based the interest on the amount of the Lawyer's net judgment, or $10,760.13. The second year it based the interest on the judgment plus the accrued interest, or a total figure of $11,298.13. This process continued for each year that the court awarded interest. In its August 2011 judgment, the court stated: "Interest shall not be compounded and the prior compounding was a mistake." It modified the amount of interest set in the September 2010 judgment accordingly. The Lawyer contends that he "should receive interest on the interest after it is annualized." He states that "[n]either the statute nor case law addresses the issue; however, assuming a logical business transaction, equity would dictate that the interest should earn interest until paid." The statute to which he refers is Tenn. Code Ann. § 47-14-123 (2001).[5] Remarkably, the Lawyer provides us with no authority as to what factors the court should have considered in doing equity. Even more remarkably, as the Client points out, the Lawyer overlooks or refuses to recognize a Supreme Court case that does directly address the issue. In ***Otis v. Cambridge Mut. Fire Ins. Co***, 850 S.W.2d 439, 447 (Tenn. 1993), the High Court held:

> To interpret the statute to mean compound interest is authorized constitutes a forced construction that impermissibly extends the intent of the legislature. The award of prejudgment interest should be calculated at *simple interest* with a 10% per annum cap.

(Emphasis added.) ***Otis*** is still good law. Accordingly, we hold that the trial court did not abuse its discretion in modifying the September 2010 judgment to eliminate compound interest.

---

[5]The exact language of the statute is as follows:

> ` Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum; provided, that with respect to contracts subject to § 47-14-103, the maximum effective rates of prejudgment interest so awarded shall be the same as set by that section for the particular category of transaction involved. In addition, contracts may expressly provide for the imposition of the same or a different rate of interest to be paid after breach or default within the limits set by § 47-14-103.

C.

We turn now to the final issue of whether the trial court abused its discretion in taxing any part of the court costs, including discretionary costs, to the Lawyer. Before we reach the merits of that issue, we note that the court first ruled on the motion for discretionary costs in its August 2011 judgment from which the Lawyer filed his notice of appeal. The motion was filed after the September 2010 judgment but before the August 2011 judgment. The pending motion for discretionary costs did not prevent the September 2010 judgment from becoming a final judgment that could not be appealed. *Roberts*, 2010 WL 4865441 at *8.

The thrust of the Lawyer's argument is that he was the prevailing party on all aspects of this case, and, therefore, all costs, including discretionary costs, should have been taxed to the Client. For good measure, the Lawyer throws in an argument that the Client is a liar and the trial court must have so found. However, the Lawyer furnishes no citation to the record where we could locate this supposed finding. We have looked without success for such a finding. He also throws into the mix the fact that when the Client dismissed her original complaint without prejudice, the order allowing the dismissal taxed the costs to her. However, the Lawyer overlooks the fact that the order allowing the dismissal was not final and therefore subject to revision up until entry of a final judgment. The Client reinstated her claims by way of counterclaim in response to the Lawyer's decision to prosecute his counterclaims. The court ultimately ruled on costs in a global manner. Thus, we believe that the only colorable challenge to the trial court's allocation of costs is that the Lawyer should have been awarded all his costs as the prevailing party. The Client disagrees that the Lawyer was the prevailing party, but neither party furnishes this Court any authority as to what constitutes the "prevailing" party for the taxation of costs. Since the trial court awarded the Lawyer part, but not all, of his discretionary costs, it appears that the trial court found that the Lawyer was, to a limited extent, a prevailing party. We further note that the express language of Tenn. R. Civ. P. 54.04[6] clearly contemplates that there will be cases where, in the trial court's discretion, it

_____

[6]Tenn. R. Civ. P. 54.04 states as follows:

> (1) Costs included in the bill of costs prepared by the clerk shall be allowed to the prevailing party unless the court otherwise directs, but costs against the state, its officers, or its agencies shall be imposed only to the extent permitted by law.

> (2) Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions (or stipulated

(continued...)

-18-

is appropriate to deny some or all of the costs, even allowable costs, requested by a prevailing party. ***Waggoner Motors, Inc. v. Waverly Church of Christ***, 159 S.W.3d 42, 65 (Tenn. Ct. App. 2004); *see **Lock v. National Union Fire Ins.***, 809 S.W.2d 483, 490 (Tenn. 1991). In our view, based upon a complete review of the record, the bizarre facts of this case, and the manner in which this case was handled, make this one of those cases. For example, the record shows that the Lawyer insisted on personally taking the Client's deposition – even though he had counsel of record – and in questioning her in detail about many, if not all, of the love notes and cards they exchanged over the five or six year relationship. He enthusiastically explored every innuendo, sexual and otherwise, in those writings. In fact, those writings are part of the sizeable record sent to this court. We have reviewed that deposition, and we see very little justification for that kind of examination. As best we can tell, the Client has never denied in this case that she had a lengthy affair with the Lawyer. This was not a case for divorce or alimony. We have already suggested that the driving force behind this litigation, for both parties, was revenge and retribution. We conclude that at least part of the deposition we have used as an example was, at best, overkill.[7] This is only one example. The court was well aware of this and other questionable conduct by both parties that made this litigation necessary and that prolonged and complicated the case. Upon review of the record in this case, we cannot say that the court's decision to tax some of the costs to the Lawyer, including some of his own discretionary costs, was based upon incorrect legal standards, illogical, based on an

_____

[6](...continued)

> reports) and for trials, reasonable and necessary interpreter fees for depositions or trials, and guardian ad litem fees; travel expenses are not allowable discretionary costs. Subject to Rule 41.04, a party requesting discretionary costs shall file and serve a motion within thirty (30) days after entry of judgment. The trial court retains jurisdiction over a motion for discretionary costs even though a party has filed a notice of appeal. The court may tax discretionary costs at the time of voluntary dismissal. In the event an appeal results in the final disposition of the case, under which there is a different prevailing party than the prevailing party under the trial court's judgment, the new prevailing party may request discretionary costs by filing a motion in the trial court, which motion shall be filed and served within thirty (30) days after filing of the appellate court's mandate in the trial court pursuant to Rule 43(a), Tenn. R. App. P.

[7]We are aware that the trial court refused to award sanctions against the Lawyer and his counsel for the way depositions were conducted. We do not reach the merits of that ruling. Given the trial court's other rulings, we think it is fair to say that the trial court did not intend to condone the Lawyer's conduct merely by denying sanctions.

erroneous assessment of the evidence, or resulted in an injustice. We conclude that other reasonable judicial minds could reach the same result. Therefore, we hold that the trial court did not abuse its discretion in the assessment of costs.

## IV.

The judgment of the trial court, entered August 5, 2011, is affirmed. Costs on appeal are taxed to the appellant, Howell H. Sherrod, Jr. This case is remanded, pursuant to applicable law, for enforcement of the judgment and collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE